W. Lynn ROBERTS, doing business as Roberts Aircraft Company, Plaintiff,

v.

UNDERWRITERS AT LLOYDS LONDON, an unincorporated association of individuals, and Haidinger-Hayes, Inc., a corporation, Defendants.

No. 3416.

United States District Court
D. Idaho, S. D.
June 12, 1961.

J. F. Martin, Boise, Idaho, for plaintiff.

Moffatt & Thomas, Boise, Idaho, for defendant.

FRED M. TAYLOR, District Judge.

By this action plaintiff seeks to recover on a policy of insurance issued by defendant Underwriters at Lloyds London (Lloyds) through defendant Haidinger-Hayes, Inc. Federal jurisdiction is invoked on the basis of diversity of citizenship with the amount in controversy exceeding $10,000. Plaintiff was unable to obtain service on defendant Haidinger-Hayes, Inc. within the jurisdiction of this Court and therefore the action against this defendant was dismissed without prejudice. The remaining parties have submitted this matter for the Court's determination on a stipulation of facts together with certain depositions, exhibits and briefs. They have each moved the Court for a summary judgment.

Plaintiff is a citizen of the State of Idaho and operates a flying service. Prior to the issuance of the insurance policy in question, plaintiff purchased a helicopter from Bell Helicopter Corporation and executed a mortgage to said corporation on the helicopter for the balance of the purchase price. Application was made to Transpacific Insurance Agency in California for insurance to protect plaintiff and the interests of Bell Helicopter Corporation, as mortgagee, against loss or damage to the helicopter. Said agency solicited the plaintiff for coverage on the aircraft upon information received from Bell Helicopter Corporation. The insurance was obtained through Haiding-

er-Hayes, Inc., a brokerage corporation at Los Angeles, California. According to plaintiff's deposition, the insurers were Lloyds and Arrow Insurance Underwriters.

In January of 1957 this insurance policy was renewed without any material changes in its terms, except that defendant Lloyds became the sole insurer. This policy is the one in controversy. Plaintiff's Exhibit 1. Its terms, in part, provide that:

"This Certificate Does Not Apply:

\* \* \* \* \* \*

"5. (d) While the aircraft is being operated by any person other than the pilot or pilots approved hereunder or by a pilot otherwise approved but whose Certificate has been restricted, revoked or suspended or has expired, except that mechanics and pilots certified by the Civil Aeronautics Administration may when so authorized by the Assured operate the aircraft on the ground or water."

Under "Declarations" the policy provides:

"10. The aircraft will be operated only by the following pilots:

"Richard Case".

The named pilot, Richard Case, was employed for only a few months by the plaintiff. One Lee Baxter, plaintiff and others flew the helicopter, but they were not listed as pilots in said policy. Plaintiff received the certificate of insurance and he was generally aware of the terms of coverage. Upon renewal of the policy, although Case had terminated his employment with plaintiff, plaintiff did not request the defendant or anyone to delete Case's name from the policy or add the name of any other person or persons as pilot or pilots of the helicopter. Plaintiff does not recall receiving a copy of the renewed policy, but he paid the premium thereon when billed. (Plaintiff's Deposition). This was the situation when, on August 8, 1957, the helicopter crashed and burned near Salmon, Idaho, while being piloted by Lee Baxter who was killed in the accident.

Defendant Lloyds assigned an independent adjuster, Frank G. Jones, to adjust the loss. Bids were taken on the salvage of the helicopter which culminated in its retention by plaintiff. Its value was to be deducted from his payment under the policy. No money changed hands with respect to said salvage. Subsequently, Jones recommended to defendant Lloyds that plaintiff's claim be denied because the helicopter was being piloted by Lee Baxter who was not specified to fly said aircraft under the terms of the policy. Thereafter, the defendant invoked the exclusionary clause quoted above and denied coverage. Plaintiff then instituted this action. It is the plaintiff's contention that the clause is ambiguous and should be construed in favor of coverage, or, in the alternative, that defendant Lloyds is estopped from denying coverage.

Answering plaintiff's complaint, defendant Lloyds denied coverage, and, in addition, filed a "cross-complaint". The basis of defendant's action is a "breach of warranty" endorsement in the policy whereby this defendant agreed to pay the Bell Helicopter Corporation, as mortgagee, the balance owing on the aircraft at the time of the loss. The terms of the policy further provide that defendant is subrogated to all the rights of the mortgagee in the event the endorsement is enforced. On January 29, 1958, Bell Helicopter Corporation, pursuant to the provisions of the said endorsement, made a claim against the defendant in the amount of $5,492.96. Defendant paid this amount, and by virtue of its subrogated rights now seeks to recover the same from the plaintiff.

The first issue to be resolved is whether the policy as written covered plaintiff's loss at the time of the accident. Defendant's sole defense is that the exclusionary clause suspended coverage while anyone other than the pilot named and approved in the policy was flying the helicopter. Since Lee Baxter was the pilot at the time of the loss and he was not named as a pilot in the policy, the defendant Lloyds contends the plaintiff cannot recover.

The cases involving such clauses in aircraft insurance policies are not numerous, but there are a sufficient number reported which sustain defendant's position on this first issue. Most of these cases are annotated in 9 A.L.R.2d 581 and 48 A.L.R.2d 704, and cited in 29A Am.Jur. § 1348, Insurance. From these authorities, and others, a few general principles have been established.

First, these authorities reveal that the rules of construction generally applicable to insurance policies are used to construe policies covering aircraft. Ambiguities are construed in favor of the insured, but contracts of insurance which do not contravene public policy and which employ plain and unambiguous language must be enforced as written. Bruce v. Lumbermen's Mutual Casualty Co., D.C.E.D.N.C.1954, 127 F.Supp. 124, affirmed 4 Cir., 1955, 222 F.2d 642; Petro v. Ohio Cas. Ins. Co., D.C.S.D.Cal. 1950, 95 F.Supp. 59; Federal Ins. Co. v. McNichols, Fla.1959, 77 So.2d 454, 48 A.L.R.2d 702.

Second, an insurer may lawfully limit its liability by excluding certain risks and hazards from coverage. While the insured is engaged in such forbidden conduct, coverage is suspended. Bruce v. Lumbermen's Mutual Casualty Co., supra; Globe Indemnity Co. v. Hansen, 8 Cir., 1956, 231 F.2d 895; Powell Valley Elec. Coop. v. United States Aviation U., D.C.W.D.Va.1959, 179 F.Supp. 616.

Third, the insurer need not show a causal connection between the forbidden conduct and the resulting loss to successfully avoid liability under such a clause because the rights of the insured flow from the contract and not from a claim arising in tort. See the latter two cases, supra. For cases not involving aircraft insurance policies see Travelers' Protective Ass'n of America v. Prinsen, 1934, 54 S.Ct. 502, 291 U.S. 576, 78 L.Ed. 999; Conner v. Union Automobile Ins. Co., 1932, 122 Cal.App. 105, 9 P.2d 863; Bradley v. Pacific Employers Ins. Co., 1942, 53 Cal.App.2d 619, 127 P.2d 1007.

The policy of insurance in question states that it did not apply while the aircraft was "being operated by any person other than the pilot or pilots approved hereunder * * *." The only pilot named and approved in the policy is Richard Case. Lee Baxter, the pilot at the time of the loss, was not named in the policy and while he was operating the helicopter coverage was suspended under the terms of said exclusionary clause. Plaintiff urges that the clause is ambiguous because it further reads: "or by a pilot *otherwise approved* but whose Cerificate has been restricted, revoked or suspended or has expired * * *" (Emphasis added). Plaintiff urges that the italicized words should be construed to mean approved in some other manner such as by the Civil Aeronautics Administration or to mean any pilot who had ever been named in a similar policy issued by Lloyds. Baxter apparently had been named and approved as a pilot in a similar policy prior to his employment with the plaintiff. To accept this construction would ignore the true meaning of the clause and words considered ambiguous by the plaintiff. These words reasonably read and fairly construed mean that the policy does not apply while the pilot otherwise approved, meaning Richard Case, has had his certificate restricted, revoked, etc. If the insurer had meant to extend the broad coverage which plaintiff reads into the policy it would have no doubt indicated such by appropriate language as it did in the last part of the clause which reads: "except the mechanics and pilots certified by the Civil Aeronautics Administration may when so authorized by the Assured operate the aircraft on the ground or water." No such general coverage was extended while the helicopter was being operated in the air by a pilot other than the one named in the policy. With some diligence plaintiff most likely could have had Lee Baxter's name added to the policy, but he admittedly failed to request such an addition.

Plaintiff also argues that this violation of the exclusionary clause is ir-

relevant because the defendant has failed to prove any causal connection between the violation and the resulting loss. It is true that the exact cause of the crash has not been determined, but under the third general principle, supra, causation is immaterial. The policy plainly states that the certificate is not applicable *while* the forbidden conduct existed. It does not state that the certificate does not apply "by reason of" or when "caused by" the forbidden conduct. Plaintiff contends, however, that under the circumstances involved in the formation of this contract of insurance the law of the State of Idaho is controlling, and that its courts hold there must be a causal connection between the forbidden conduct and the resulting loss. Assuming that the law of the State of Idaho does govern this situation, the cases cited by plaintiff are not in point. See Sweaney & Smith Co. v. St. Paul Fire & Marine Ins. Co., 1922, 35 Idaho 303, 206 P. 178; Leach v. Farmer's Automobile Interinsurance Exchange, 1950, 70 Idaho 156, 213 P.2d 920. Any inferences favorable to plaintiff's position which may be drawn from the dictum in these authorities are equally refuted by the inferences which may be drawn from the case cited by the defendant. Mabee v. Continental Casualty Co., 1923, 37 Idaho 667, 219 P. 598, 37 A.L.R. 348. Furthermore, it appears the Supreme Court of the State of Idaho has never had the opportunity to decide this precise question. If it does, this Court believes it will follow the majority view which recognizes the right of the insurer to limit his liability by appropriate clauses and to deny liability for a violation thereof without showing causation. Regardless, this Court believes that the law of the State of California is controlling under the circumstances here and it follows the majority view. Conner v. Union Automobile Ins. Co., supra. The policy was issued on January 16, 1957, at Los Angeles, California, by Haidinger-Hayes, Inc. As stated in the policy it was not valid until signed by Haidinger-Hayes, Inc. and this was done in California. Plaintiff's signature was not required.

The policy was delivered to Bell Helicopter Corporation at either its Fort Worth, Texas office or to its Western Division manager in California. Plaintiff does not recall receiving a copy of the same, but he did pay the premium by check drawn on an Idaho bank, mailing it to the Transpacific Insurance Agency in California. The latter apparently forwarded it to Haidinger-Hayes, Inc. According to Heine v. New York Life Ins. Co., 9 Cir., 1931, 50 F.2d 382, the law of the place where the contract of insurance was made is controlling. Usually a contract is made where all of the essential acts contributing to the efficacy of a policy of insurance are performed, but where the acts take place in several jurisdictions the place of the last essential act that binds the parties determines which State law governs. 29 Am.Jur. §§ 19–29, Insurance. Here most of the essential acts took place in the State of California and that State is where the policy of insurance became binding on the parties thereto when signed by Haidinger-Hayes, Inc.

 Correctly assuming that the Court might construe and enforce the policy as written, the plaintiff next contends that defendant Lloyds is estopped from denying coverage. This estoppel is predicated on the conduct of defendant's adjuster in regard to the salvage and the conduct of one William Roth of the Transpacific Insurance Agency, to be discussed, infra. The general law of the State of California on this issue is set forth in Ivey v. United National Indemnity Co., 9 Cir., 1958, 259 F.2d 205, at page 208, wherein, it is said:

"Whatever may be the rule elsewhere, the California decisions dealing with the problem now presented to us indicate that under the law of that state an insurance company may by its conduct or dealings apart from the policy itself be estopped from denying that coverage has been furnished for a risk which the insured has been led to believe is protected under the policy."

However, according to the Court of Appeals for the Ninth Circuit in Matsuo Yoshida v. Liberty Mutual Insurance Co., 9 Cir., 1957, 240 F.2d 824, the California rule is restricted to the extent that:

" * * * an insurance company cannot waive or be estopped from denying liability, by reason of *subsequent* acts or conduct of the insurer, under an automobile liability policy for damages incurred in an accident under conditions specifically excluding the company from liability." Id., at page 830. (Emphasis added.)

Plaintiff's argument for estoppel is based on events which primarily occurred subsequent to the accident of August 8, 1957. His negotiations for the salvage with defendant's adjuster have already been discussed. In addition plaintiff stresses the conduct of William Roth of the Transpacific Insurance Agency to buttress his argument. Plaintiff assumes that Roth was defendant's agent. Roth's status in this lawsuit is quite uncertain. Neither party saw fit to take his deposition. The statements attributed to him are based on hearsay. For instance, adjuster Jones says in his report to defendant Lloyds that his office was informed by Roth that he had notified the defendant to add Lee Baxter's name to the policy. (Plaintiff's Exhibit 1, Deposition of Frank G. Jones). Roth, if his deposition had been taken, might have verified this. It was purportedly denied by Haidinger-Hayes, Inc. This is the only alleged conduct of the defendant which took place prior to the accident. Where Roth got his information concerning Baxter's operation of plaintiff's helicopter is not known because plaintiff does not recall requesting any such addition. When Baxter was hired by plaintiff he told plaintiff that "he was an approved Lloyd's pilot and he told me that he was and had been for some time." Other than checking with Baxter's former employers to determine his ability, this was the extent of plaintiff's concern about Baxter flying the helicopter. This hearsay from Jones' report cannot support any conclusion that plaintiff was misled by the defendant into believing coverage existed prior to the loss.

Subsequent to the loss, according to plaintiff's deposition, Roth told him by telephone that Baxter was an "approved pilot", and on another occasion that "we will have a check day after tomorrow." Roth is also reputed to have told Arthur L. Fornoff, manager of the Western Division of Bell Helicopter Company, that the money would be forthcoming. (Deposition of Arthur L. Fornoff). It appears from the record that at the time of the crash plaintiff had several outstanding contracts for his flying services and was in need of a replacement for the helicopter destroyed in the accident. In order to facilitate recovery on the policy Fornoff contacted Roth "to speed up things." Fornoff said plaintiff told him over the telephone that he did not have sufficient funds to finance a replacement. On August 19, 1957, Fornoff received a telegram from Roth that a settlement of $18,376 had been reached. On the strength of this telegram plaintiff was sold another helicopter by Bell Helicopter Corporation and Transpacific Insurance Agency solicited plaintiff's business for the insurance. Defendant Lloyds insured the new helicopter and it is reasonable to infer that said corporation was once again fully protected by a breach of warranty endorsement covering plaintiff's indebtedness on the replacement. The record indicates that it was the policy of the corporation upon taking a mortgage from the purchaser to have him fully protect the mortgage from such a loss by said endorsement. To this end the corporation worked closely with Roth who solicited the prospective purchaser for insurance. Roth was a representative of the Transpacific Insurance Agency, an insurance broker. Under § 33 of the California Insurance Code, he was plaintiff's agent, and at best, was the defendant's agent only to the extent of collecting the premiums from the plaintiff and delivering the policy to Bell Helicopter Corporation. See Ivey v. United National Indemnity Co., supra. There is not sufficient evi-

dence in the record from which the Court can find that Roth was an agent of the defendant to adjust and settle the loss and thus misled plaintiff to believe coverage existed, and, even if there were, subsequent acts of the insurer will not support plaintiff's theory of estoppel. Matsuo Yoshida v. Liberty Mutual Insurance Co., supra.

No doubt the plaintiff will be disappointed by this decision but this situation is brought about by his apparent indifference toward his insurance coverage. The record made by the parties reflects a total lack of communication between plaintiff, his broker and the defendant from the time the initial policy was issued to the date of the accident. Some diligence on plaintiff's part could have averted his loss. No doubt the defendant would have added Lee Baxter's name to the policy if plaintiff would have requested such an addition. The record reveals that Baxter was a qualified pilot.

The parties have stipulated the material facts upon which the defendant Lloyd's cross-complaint is based. Inasmuch as the defendant has paid the sum due Bell Helicopter Corporation pursuant to the provisions of the policy in question and has been subrogated to the rights of said corporation, it is the opinion of the Court that the amount thereof is now due and owing to the defendant by the plaintiff.

Accordingly, it is the opinion of the Court that judgment be entered in favor of the defendant and against the plaintiff on plaintiff's complaint, and for the defendant and against the plaintiff on defendant's "cross-complaint" in the sum of $5,492.96, with interest thereon at the rate of six per cent from the 28th day of January, 1958.

Counsel for the defendant shall prepare findings of fact, conclusions of law, and a proposed judgment, submit the same to counsel for the plaintiff, and the originals to the Court.