[Civ. No. 20753. Fourth Dist., Div. Two. May 28, 1980.]

MIDDLESEX MUTUAL INSURANCE COMPANY, Plaintiff,
Cross-defendant and Respondent, v.
HERBERT C. BRIGHT, as Administrator, etc., Defendant,
Cross-complainant and Appellant.

COUNSEL

Macdonald, Halsted & Laybourne, John R. Shiner and Edward V. Washington, Jr., for Defendant, Cross-complainant and Appellant.

Ross, Fields & Zax, Arnold L. Ross and Mark Bernstein for Plaintiff, Cross-defendant and Respondent.

OPINION

**MORRIS, J.**—This action involves a dispute between the estate of respondent's insured (McCoy) and respondent, Middlesex Mutual Insurance Company (Middlesex), concerning the coverage afforded by an aircraft insurance policy issued to McCoy in connection with a loss occurring on November 28, 1972.

Middlesex filed a complaint for declaratory relief requesting a judicial determination that the insurance policy does not provide coverage for the loss, and that plaintiff is not obligated to defend an action brought by Southern California Edison Company against plaintiff's insured. McCoy cross-complained against Middlesex, seeking a declaration that Middlesex has a duty under the policy to indemnify and to reimburse McCoy for expenses incurred in defending the Edison Company action.

*The Facts*

The matter was submitted to the trial court on a written stipulation of facts which may be briefly summarized as follows:

Plaintiff issued its policy of insurance insuring a certain aircraft owned by Jack E. McCoy and Clair K. Lair and providing public liability and property damage coverage.

On November 28, 1972, while the insurance was in force, the aircraft, piloted by Jack McCoy, struck a tower of a Southern California

Edison Company transmission line. The accident occurred during the nighttime at a location approximately three miles south of Searchlight Airport, Clark County, Nevada. The runway at Searchlight was unlighted and had no radio facility for aircraft to ground communication in operation at the time of the accident.

The aircraft crashed, killing the pilot and two passengers. At the crash site in and around the wreckage was found approximately 541 kilos of marijuana, and the smell coming from the burning aircraft was positively identified as burning marijuana. There were also two packages of cigarettes containing Republic of Mexico revenue stamps and one Smith & Wesson magnum revolver, loaded with five active rounds.

Southern California Edison Company filed an action to recover compensation for the damages caused to its transmission line by the aircraft, and plaintiff filed this action for declaratory relief to determine its obligations under the policy.

### The Policy

The pertinent provisions of the policy are its coverage, defense, and exclusion clauses.

1) Coverage. Under part 1, coverage C, the policy obligates Middlesex as follows:

"Property Damage Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft."

2) Defense, settlement, supplemental payments. Under the heading entitled "Insuring Agreements," paragraph II of the policy provides, in part:

"With respect to such insurance as is afforded by this Policy for bodily injury liability and for property damage liability coverages the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof. . . ."

3) Exclusions. Under the heading entitled "Exclusions" the policy provides in pertinent part as follows:

"This policy does not apply:

". . . . . . . . . . . . .

"4. to any Insured:. . .(c) who operates or permits the aircraft to be operated for any unlawful purpose or any purpose other than as specified in the Declarations;. . ."[1]

The trial court found that at the time of the accident the aircraft was being used for an unlawful purpose. Specifically the court found that the aircraft was being used in the transportation of marijuana into the United States in violation of Federal Aviation Regulation 14 Code of Federal Regulations section 91.2,[2] 18 United States Code section 45, and California Health and Safety Code section 11350.

On the ground that the insurance policy excludes all coverage when the aircraft is used for an unlawful purpose, the trial court entered judgment declaring that plaintiff's policy does not afford coverage for losses arising out of the November 28, 1972, accident and that plaintiff is not obligated to defend its insureds nor pay any losses in connection with the lawsuit filed against the insured by Edison Company.

This appeal is from the judgment.

### Discussion

Since the case was submitted upon stipulated facts and the insurance policy, the only issues before this court are issues of law concerning the interpretation of a written contract of insurance and the applicability of Insurance Code section 11584.[3]

---

[1]The purposes of use specified in the declarations were "Pleasure and Business."

[2]The intended citation was to 14 Code of Federal Regulations section 91.12 prohibiting knowing transportation of narcotic drugs or marijuana.

[3]The defendant contends that the stipulated facts do not support the additional finding of the trial court that the aircraft was being used for the illegal transportation of marijuana into the United States. In view of the stipulated facts, the additional finding that the aircraft was being used for such transportation is clearly supported by substantial evidence.

Section 11584 of the California Insurance Code provides as follows: "No policy of insurance issued or delivered in this state covering any loss, expense or liability arising out of the ownership, maintenance, or use of an aircraft shall exclude or deny coverage because the aircraft *is operated in violation of* federal or civil air regulations, or any state law or local ordinance. . . .

"This section does not prohibit the use of specific exclusions or conditions in any such policy which relates to any of the following:

"(1) Certification of an aircraft in a stated category by the Federal Aviation Administration.

"(2) Certification of a pilot in a stated category by the Federal Aviation Administration.

"(3) Establishing requirements for pilot experience.

"(4) *Establishing limitations on the use of the aircraft . . . .*" (Italics added.)

■ Appellant makes the following contentions:

1. Insurance Code section 11584 voids exclusion 4(c) contained in the insurance policy.

2. In order for the loss to be excluded under exclusion 4(c), it is necessary that the loss be proximately caused by the illegal use.

3. Exclusion 4(c) is ambiguous and inconspicuous and therefore unenforceable as a matter of law.

A. *The Effect of Insurance Code Section 11584*

Defendant contends that section 11584 has the effect of voiding any policy exclusion purporting to exempt aircraft flights for an illegal purpose. This argument is based upon the assumption that the language in section 11584 which reads "operated in violation of federal or civil air regulations, or any state law or local ordinance," is synonymous with the policy exclusion language, "operated for any unlawful purpose."

Having made this assumption defendant then focuses upon section 11584, subdivision (4), which authorizes specific exclusions relating to the enumerated items, including "Establishing limitations on the use of the aircraft," and concludes that interpreting subdivision (4) to authorize an exclusion which relates to illegal use would make no sense.

If defendant's basic assumptions were correct, we would agree. Stated otherwise, if section 11584 is aimed at prohibiting policy exclusions based upon the illegal use of the aircraft, then certainly it would make no sense to authorize in subdivision (4) policy exclusions based upon "the use of the aircraft." However, we do not agree that it is necessary to give subdivision (4) a strained or unnatural interpretation in order to make sense of the section. The flaw in defendant's argument is in the interpretation of the first paragraph.

Where defendant errs is in equating the statutory language "operated in violation of law" and the policy language "operated for an illegal purpose." It seems eminently clear, as the trial court noted, that the statute prohibits exclusions relating to the manner of operation of the aircraft which is in violation of the described laws and regulations, and not to the use for which the aircraft is operated; whereas, the policy exclusion relates to the use or purpose for which the aircraft is operated.

That the statute is directed at the manner of operation rather than use is emphasized by the second paragraph of section 11584 which states that the section does not prohibit specific exclusions or conditions relating to the enumerated subjects, including, in subparagraph (4), limitations on use.

Read in this way there is no conflict between the general provision, forbidding exclusions based on operational violations, and subparagraph 4, which explains that the section does not prohibit limitations based on use. Even defendant does not argue that the limitation on use contained in the declarations, i.e., pleasure and business, is void under section 11584. It would indeed be a tortured construction of the statute to hold that a policy may properly limit use in the declarations, but that any attempt to do so in the exclusions is void.[4]

---

[4]We do not here refer to defendant's separate contention that the provision is inconspicuous. That will be considered in later discussion.

We hold that the policy exclusion is a specific exclusion establishing a limitation on the use of the aircraft, and is therefore not prohibited by section 11584.

## B. *Scope of the Policy Exclusion*

Defendant argues that, even if the exclusion is not void under section 11584, it is not applicable to the November 28, 1972, accident because there was no proof that the use for an unlawful purpose was a proximate cause of the injury.

Defendant asserts that it is a general rule that, in order to avoid liability under "a violation of law" clause, the insurer must establish that the violation of law has some causative connection with the death or injury. The cases cited in support of this proposition have no resemblance to the factual situation presented in this case.

*Romero* v. *Volunteer State Life Ins. Co.* (1970) 10 Cal.App.3d 571 [88 Cal.Rptr. 820], which defendant cites as the *only* California case discussing the issue of whether there need be a causal connection between the violation of law and injury, involved an accidental death life insurance policy which excluded coverage for "'injuries contracted or sustained by the Insured while committing or attempting to commit an assault or felony.'" (*Id.*, at p. 574.) Defendant appears to think it significant that the parties agreed "that the felonious acts must be the proximate cause of injury to another." (*Id.*, at p. 579, italics omitted.)

Even if the court had held, which it did not, that a causal relationship was essential under the policy, the case would not be helpful in considering the policy exclusion here involved. *Romero* involved a "violation of law" clause in a life and accident policy which excluded coverage for injuries sustained "while committing" a felony. As the *Romero* court noted, whether the word "while" is used as a word of time or of causation, as in the phrase "as the result of," has been the subject of substantial consideration and diverse opinion by the courts called upon to interpret such exclusions in life insurance policies. (*Romero* v. *Volunteer State Life Ins. Co., supra*, 10 Cal.App.3d 571, 579.) *Davilla* v. *Liberty Life Ins. Co.* (1931) 114 Cal.App. 308 [299 P. 831], also relied upon by defendant, involved a life insurance policy which contained a similar exception. Although we are not given the language prefacing the exception, we are told that the policy provided coverage where injury was sustained "'solely through...accidental means'" and excepted in-

jury resulting from "'the intentional act of the Insured,'" "'exposure to unnecessary danger'" and "'while [the Insured was] violating the law.'" (*Id.*, at pp. 312-313, italics omitted.)

Exclusion 4(c) in the instant policy contains no such ambiguity.

Much more helpful is the case of *Underwriters at Lloyd's of London* v. *Cordova Airlines* (9th Cir. 1960) 283 F.2d 659, 661. The Ninth Circuit Court of Appeals held that an exclusion for "'Any loss...arising from...any flying in which a waiver issued by the Civil Aeronautics Authority is required,'" excluded coverage when the aircraft crashed with a load of dynamite aboard for which a waiver was required, but not obtained, even though the dynamite did not contribute to the aircraft accident.

To be sure, the language "'arising from...any flying in which a waiver...is required'" is not identical to that contained in the Middlesex policy. However, it is clear that both refer to the "use" of the aircraft and have the effect of suspending coverage during such use. (See *Underwriters at Lloyd's of London* v. *Cordova Airlines, supra*, 283 F.2d 659, 665.)

In *Roberts* v. *Underwriters at Lloyds London* (S.D. Idaho 1961) 195 F.Supp. 168, 171, the court, also applying California law,[5] held that, "an insurer may lawfully limit its liability by excluding certain risks and hazards from coverage. While the insured is engaged in such forbidden conduct, coverage is suspended...[and] the insurer need not show a causal connection between the forbidden conduct and the resulting loss to successfully avoid liability under such a clause because the rights of the insured flow from the contract and not from a claim arising in tort." *Roberts* involved an aircraft policy which excluded coverage "While the aircraft is being operated by any person other than the pilot or pilots approved hereunder," and the pilot at the time of the loss was not named as a pilot in the policy.

As noted above, Insurance Code section 11584 authorizes policy limitations on the use of the aircraft. In view of the liability assumed by Middlesex under its contract with the insured, it was reasonable to pro-

---

[5]California law was held to be applicable to the policy covering a helicopter although the insured was a citizen of Idaho, because California was held to be the place where the policy became binding upon execution in California. (*Roberts* v. *Underwriters at Lloyds London, supra*, 195 F.Supp. 168, 172.)

vide for a suspension of coverage when the aircraft is used for illegal purposes. The insurer is otherwise made an unwilling insurer of unlawful activities.

We conclude that exclusion 4(c) herein had the effect of limiting liability under the policy by excluding from coverage the risks and hazards encountered by insured while operating or permitting the operation of the aircraft for illegal purposes. It was unnecessary to show a causal relationship between the illegal use and the loss.

## C. *Enforceability*

Finally, defendant contends that exclusion 4(c) is ambiguous and inconspicuous so that it must be strictly construed against the insurer. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].)

The reasons given for defendant's assertion that the provision is ambiguous are that, (1) the policy declarations purport to cover all pleasure and business uses and, therefore, exclusion 4(c) contradicts the policy declarations and endorsements (presumably the illegal transportation of marijuana was for business); and (2) exclusion 4(c) is overbroad by including acts falling within Insurance Code section 11584.

While the policy might well have been written to include the limitation in the declarations, i.e., to provide that the policy cover only "lawful" business uses, the fact that it did not does not necessarily create an ambiguity. An exclusion would be unnecessary if the matter covered therein would not otherwise be covered. As long as the exclusion is clear and unmistakable and does not violate the reasonable expectation of the parties it becomes a part of the insurance contract.

As previously discussed the provision does not violate Insurance Code section 11584. It constitutes a limitation on use expressly authorized by section 11584, subdivision (4).

Defendant contends that the exclusion is inconspicuous because it does not appear in the declarations as well as in the exclusions. Defendant cites *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263; *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; and *National Indemnity Co.* v. *Demanes* (1978) 86

Cal.App.3d 155 [150 Cal.Rptr. 117], in support of his contention that where the exclusion is not also mentioned in the declarations it has been held not to be a conspicuous limitation on coverage.

Defendant misreads the import of these cases. They did involve exclusionary clauses, not declarations, and they were found to be inconspicuous. However, in no one of those cases did the court hold that the failure to include the exclusion in the declarations was a controlling factor. Rather, in each case the policy was analyzed with respect to the interrelationship of its parts and the surrounding circumstances.

In *Gray* v. *Zurich*, the court found that the exclusionary clause was not conspicuous "since it appears only after a long and complicated page of fine print, and is itself in fine print; its relation to the remaining clauses of the policy and its effect are surely not 'plain and clear.'" (At p. 273.)

What defendant ignores is that in each of the cases cited the overriding consideration was that the interpretation of the insurance policy must be pursued in light of the insureds' reasonable expectations. (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 270, fn. 6.) In *Steven* v. *Fidelity & Casualty Co., supra*, 58 Cal.2d 862, the insured, who purchased a policy of airplane trip insurance from an airport vending machine, was found to have a reasonable expectation that substitute emergency transportation falls well within the obligation undertaken by the insurer.

The court noted that the one provision that dealt with substitute transportation in the event of emergency was not only hidden beneath the machine before purchase, and subject after purchase to ambiguity, but also tended to be harsh and unconscionable. It purported to limit substitute service to "'riding in or on a land conveyance.'"

By contrast, exclusion (4) in the Middlesex policy is set forth in language that is clear and unmistakable. The page of the policy labeled "Declarations" under the title "Coverages" alerts the insured that the coverages are subject to all of the terms of the policy. The "Exclusions" to coverages are set forth in a section of the policy which is clearly labeled "Exclusions" in bold face type with a statement on the lead line that the "Policy does not apply:" followed by the numbered paragraphs in type of the same size and clarity as the balance of the policy, including the "Insuring Agreements."

Under such circumstances we fail to see how the insured could have any reasonable expectation that this policy would provide insurance coverage for the smuggling of 1,200 pounds of marijuana into the United States.

The judgment is affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.