[Civ. No. 52184. Second Dist., Div. Three. Sept. 27, 1978.]

TWENTIETH CENTURY-FOX FILM CORPORATION,
Plaintiff and Respondent, v.
HARBOR INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Chase, Rotchford, Drukker & Bogust, David Clark and Henry J. Bogust for Defendant and Appellant.

Simon & Sheridan, Thomas R. Sheridan, James J. Coyle and Randall E. Greer for Plaintiff and Respondent.

**OPINION**

**COBEY, Acting P. J.**—Defendant, Harbor Insurance Company (Harbor), appeals from a summary judgment and a supplemental minute order with respect to attorneys' fees, under which plaintiff, Twentieth Century-Fox Film Corporation (Fox), recovered from Harbor the principal amount of $548,138.90, together with interest thereon in the sum of

$53,086.52, attorneys' fees in the total amount of $47,780, and costs in the sum of $920.75.[1] The appeal lies and is timely. (Code Civ. Proc., §§ 437c, 904.1, subds. (a), (b); Cal. Rules of Court, rule 3(b).)

Aside from $45,000 in attorneys' fees awarded, we propose to affirm this excess judgment and related relief. In our view, Harbor became liable to Fox for such damages when it failed on July 23, 1975, to accept a reasonable settlement offer of the plaintiff in the underlying action, Sujac Productions, Ltd., et al. (Sujac),[2] although there was at that time a substantial likelihood of an excess judgment against Fox and information to that effect was communicated to Harbor along with the offer by Fox's trial counsel.

Harbor's brief puzzles us somewhat. It first argues that the trial court incorrectly applied a rule of strict liability against Harbor. The record does not support this contention. It next asserts that abundant questions of material fact were presented to the trial court. We perceive none that affect either the liability or the damages challenged.[3] It then contends that the trial court should have granted its motion for summary judgment, but if the summary judgment for Fox was proper, such cannot be the case. It finally challenges the propriety of the award of attorneys' fees to Fox to the extent that such award includes $45,000 in such fees for the prosecution of the instant action.

We have examined the foregoing contentions of Harbor and have concluded for reasons stated herein that each is without merit, aside from Harbor's challenge to the attorneys' fees awarded Fox for Fox's prosecution of the instant action. We propose to disallow such fees and will modify the judgment under appeal accordingly before affirming it.

---

[1]Harbor also appeals from a further minute order denying its motion to vacate the judgment under appeal. Harbor's own motion for summary judgment was denied. Harbor does not separately attack in its brief the principal amount of the judgment, the interest awarded, the attorneys' fees awarded incident to the compromise of the excess judgment in the amount of $2,780 and the costs awarded. By excess judgment we mean the principal amount Fox paid above the maximum limits of its policy with Harbor—namely, $548,138.90.

[2]For convenience we will speak of the plaintiffs in the underlying action in the singular number as Sujac.

[3]Harbor contends that the fact that the bulk of its liability under the policy at issue was reinsured in some way avoids its liability for the excess judgment. We fail to see any avoidance.

## FACTS

On February 3, 1969, Harbor issued to Fox a three-year, $1 million maximum (including defense costs), errors and omissions, blanket producers liability insurance policy covering, among other things, claims against the insured by reason of unfair competition. The policy provided that Harbor would have the right to take over and defend in the name of Fox any claim or legal proceeding which, in the judgment of Harbor, might ultimately involve it in liability under the policy and that Harbor would have the right to dispose of any claim or legal proceeding at its sole discretion. This policy remained in effect from February 3, 1969, until February 3, 1972.

On or about April 24, 1970, a civil action, numbered 975612 and entitled Sujac Productions, Ltd. v. Twentieth Century-Fox Film Corporation, was filed in the Los Angeles County Superior Court in which it was alleged, among other things, that Fox was liable for unfair competition and in which compensatory damages of $8 million and punitive damages of $2 million were sought. The alleged unfair competition lay in the production and release thereafter of a feature motion picture entitled "Beyond the Valley of the Dolls," which was not a sequel or an adaption of the best selling book "Valley of the Dolls" and was not based thereon as allegedly required by the 1965 and 1968 agreements between Sujac and Fox.

Fox immediately notified Harbor of the Sujac action and caused to be delivered to Harbor two copies of the summons and complaint therein. Harbor thereupon took charge of, controlled, and paid generally for the defense of the action.[4] It authorized the law firm of Musick, Peeler & Garrett to defend Fox therein, which the Musick firm thereafter did.

In 1970, 1972, and 1973 Sujac offered various settlements of the litigation within the policy's limit of $1 million, but Harbor refused them all. At the mandatory settlement conference on May 1, 1975, Sujac, through its trial counsel, offered to settle the case for $500,000 or $550,000, but Fox replied, through its trial counsel, that it was not authorized to offer more than $85,000.[5] At this conference counsel for

---

[4]Under the policy Fox was to pay $5,000 of each loss or claim. Pursuant to this provision Fox paid to Harbor as a down payment on its defense costs the sum of $5,000.

[5]Fox had agreed to contribute $10,000 of this amount.

Sujac emphasized that their primary claim was unfair competition in Fox's alleged unlawful use of the title, "Beyond the Valley of the Dolls." Counsel for Fox took the position that under Fox's aforementioned 1968 agreement with Sujac, Fox was authorized to use the title. Counsel for Sujac indicated that they would introduce evidence of Fox's profits on this motion picture as a measure of Sujac's damages resulting from Fox's unfair competition. A representative of Harbor attended this conference. The judge presiding at the conference placed the settlement value of this case at $125,000.

By letter dated May 8, 1975, Sujac, through its trial counsel, raised its settlement offer to $775,000. Such counsel explained in the letter that this demand represented less than 50 percent of Fox's exposure which he calculated at $1.6 million aside from punitive damages. Fox did not reply to this letter.

On June 19, 1975, trial of the case commenced. During the trial all causes of action except those involving unfair competition were dropped and the prayer of Sujac's complaint was consequently reduced to $4.4 million. After the case had been assigned a courtroom, trial counsel for both parties essentially reexchanged their settlement offers of May 1, 1975.

On July 23, 1975, the trial court ruled that there was no contract defense to Sujac's unfair competition claim. Previously the court had indicated that it would permit introduction of evidence regarding the profits Fox made on the challenged film. Thereupon Sujac's trial counsel informed Fox's trial counsel that Sujac would settle the case for $775,000, which Sujac's trial counsel said was about 50 percent of Sujac's anticipated recovery. Fox's trial counsel replied that he would relay this offer to the insurer.

Upon the return of Fox's trial counsel to their office on that same day, July 23, 1975, lead counsel telephoned Harbor's claims manager. He told the claims manager that the case was going badly in view of the just-stated ruling on Fox's contract defense and the court's prior indication that Sujac would be able to introduce in evidence Fox's profits on the picture as evidence of damages. He then relayed Sujac's $775,000 settlement offer and explained that Sujac's trial counsel had indicated that this figure was premised upon 50 percent of Sujac's anticipated recovery and therefore Fox's lead counsel assumed that his adversary was looking at profits in excess of $1½ million. Fox's lead counsel also told

Harbor's claims manager at this time that Sujac was also seeking in damages the $2,199,000 distribution fee, $440,000 in alleged loss of sales of a paperback book to be based on the treatment sequel submitted to Fox, and $220,000 for alleged loss of sales of the book "The Love Machine." Harbor's claims manager replied that the case was in the hands of the reinsurer and that the matter would be submitted to it. The next day Fox's counsel reported to his adversary that he was unable to get an answer from the insurer.

On August 1, 1975, the jury returned a verdict of $2 million against Fox and judgment was entered in that amount. On September 17, 1975, Fox and Harbor compromised the judgment for $1,425,000 of which, pursuant to a written agreement between Harbor and Fox, Harbor paid $876,861.10, its policy limits,[6] and Fox paid $548,138.90. Fox also paid $2,780 in attorneys' fees in connection with this compromise of the judgment.

Harbor refused to make Fox whole for the expenses it had incurred as a result of the Sujac action and on February 25, 1976, Fox sued Harbor for, among other things, such expenses and related relief, including attorneys' fees incurred in compromising the aforementioned judgment and for prosecution of the instant litigation.

DISCUSSION

1.   *The Propriety of the Judgment Under Appeal in General*

■   There is an implied covenant of good faith and fair dealing in every insurance policy that neither party to the policy will do anything that will injure the right of the other to receive the benefits of the policy. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198].) This implied covenant imposes on the insurer a duty to settle a claim against its insured within policy limits by accepting a reasonable settlement offer "whenever there is a substantial likelihood of a recovery in excess of those limits." (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14-15, 17, fn. 6 [123 Cal.Rptr. 288, 538 P.2d 744]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].) The only permissible consideration in evaluating the reasonableness of a settlement offer is whether in light of

---

[6]Harbor had already paid to the Musick firm defense costs of approximately $123,138.90.

the probable liability of the insured, the ultimate judgment is likely to exceed the offer. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 16.) A judgment in excess of the limits of a policy inferentially suggests that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim.[7] (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 431 [58 Cal.Rptr. 13, 426 P.2d 173].)

■ Applying the foregoing law to the facts of the case, we hold that Harbor became liable to Fox for the excess judgment (as compromised) and related relief generally when it failed to accept Sujac's $775,000 offer following the adverse ruling of the trial court on July 23, 1975, that there was no contract defense to Sujac's claim of unfair competition and the court's earlier ruling that the profits Fox made from the picture at issue could be introduced in support of the damage claim. The rejected settlement offer was within the policy limits and otherwise reasonable. The excess liability of Harbor was, under these circumstances, probable. Fox's trial counsel, in relaying the settlement offer to Harbor, detailed to Harbor its excess exposure, said "the case was going badly," and explained why. We do not think that the failure of Fox's counsel to recommend expressly the acceptance of the settlement offer absolves Harbor. The import of the information he then gave Harbor with respect to Harbor's probable excess liability was clear. Furthermore the excess verdict was not rendered until a week later. Thus, Harbor had ample time to evaluate Sujac's settlement offer before the adverse verdict was rendered.

2. ■ *The Inclusion of $45,000 in the Attorneys' Fees Awarded Was Improper*

Harbor challenges the inclusion of $45,000 in attorneys' fees in the judgment under appeal. These fees were awarded Fox to compensate it for the employment of counsel to prosecute the instant action. Harbor asserts that this award of attorneys' fees violates Code of Civil Procedure section 1021, which plainly implies that attorneys' fees, as a general rule,

---

[7]Under Code of Civil Procedure, section 437c, in determining whether the papers show that there is no triable issue of material fact, the court must consider all inferences reasonably deducible from the admissible evidence set forth in the papers unless such inferences are contradicted by other such inferences or evidence raising a triable issue of material fact. Our examination of the record indicates no such contradiction of this inference in this case.

are to be awarded only when specifically authorized by statute or its equivalent (see *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 506 [120 Cal.Rptr. 176]), or by agreement of the parties. (See *Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 272 [158 P.2d 3].) This is the policy established by the Legislature. (See *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5 [148 Cal.Rptr. 419, 582 P.2d 1010].)

In *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358, 361-364, 366 [118 Cal.Rptr. 581], another local division of this court held that a plaintiff insured in a suit, based partially upon an insurer's alleged breach of the implied covenant of good faith and fair dealing, could recover $650 in attorneys' fees from that insurer which the plaintiff had incurred in the settlement of his claim for fire loss against the insurer following the insurer's wrongful refusal to settle the claim equitably. The court held, in effect, that the just-stated general rule requiring essentially contractual or statutory authorization as the basis for any award of attorneys' fees did not apply and that, because of the tortious nature of the action, the insurer, presumably pursuant to Civil Code section 3333, was liable for all the detriment proximately caused by its tort, whether such detriment could have been anticipated or not.[8] The court further observed that such detriment included the cost of the protection of counsel where, but for the tortious conduct of the insurer, the insured would not have incurred that expense.

Apparently the *Mustachio* decision has been followed in but one similar case, *McDowell* v. *Union Mutual Life Insurance Co.* (C.D.Cal. 1975) 404 F.Supp. 136, 141-142, where the legal expenses incurred in the plaintiff insureds' bankruptcy were held recoverable on the basis of *Mustachio.* It is to be noted that neither *Mustachio* nor *McDowell* involved the kind of attorneys' fees challenged here—those incurred in the prosecution of a tort action by the insured against the insurer. In fact, the *Mustachio* court specifically noted that: "There is no contention that defendants are liable for attorney's fees incurred in this action." (*Mustachio* v. *Ohio Farmers Ins. Co., supra,* 44 Cal.App.3d at p. 362, fn. 4.)

---

[8]Actually a breach of the insurer's obligation to accept a reasonable offer of settlement sounds in contract as well as in tort (see *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 18), but the measure of damages in tort is broader than that in contract. (Cf. Civ. Code, § 3300 and § 3333.)

It is true that certain exceptions have been developed to the previously stated general rule against awarding the attorneys' fees incurred in civil litigation to the victorious party. Two of these are the third person litigation exception and the federal bad faith exception. The first of these exceptions, set out in Restatement of Torts, section 914,[9] has been recognized in this state for some years (see *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645]), but it is factually inapplicable to the situation before us and, in any event, has been limited to cases involving exceptional circumstances. (See *Davis* v. *Air Technical Industries, Inc., supra,* 22 Cal.3d at p. 7.) We perceive no exceptional circumstances in this case.

The second of these just-mentioned exceptions, the federal bad faith exception, has never been accepted in California (see *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 26-27 [112 Cal.Rptr. 786, 520 P.2d 10]; *Douglas* v. *Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 468-469 [123 Cal.Rptr. 683]) and as the lower appellate court in this state we do not deem it appropriate for us to adopt a judicial doctrine which our high court has not yet approved. We do note, though, that at least semantically there appears to be some justification for applying this exception in this type of case. (But see the discussion of good faith and bad faith in *Neal* v. *Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 921-922, fn. 5 [148 Cal.Rptr. 389, 582 P.2d 980].)

Leaving the exceptions to the general rule aside, the law appears to be settled in this state that an insured is not entitled to an award of attorneys' fees incurred in the prosecution of a separate action against an insurer to enforce a right to be defended or indemnified or to be reimbursed for attorneys' fees previously incurred in an action which should have been defended by the insurer. (See *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 301-302 [54 Cal.Rptr. 116, 419 P.2d 180]; *Carroll* v. *Hanover Insurance Co.* (1968) 266 Cal.App.2d 47, 50 [71 Cal.Rptr. 868]; *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 317-318 [85 Cal.Rptr. 655].) If the attorneys' fees incurred in remedying a breach of the basic obligation of indemnity in an insurance policy are not

---

[9]The exception reads as follows: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred."

Apparently this exception has been widely followed throughout the United States. (See Annot. (1956) 45 A.L.R.2d 1183, 1186.)

recoverable, then, by analogy, those incurred in a separate action of the insured against the insurer to recover damages for the breach of the implied covenant of good faith and fair dealing should not be. Stated otherwise, if recoverable damages do not include attorneys' fees incurred in the separate action by the insured for vindication of his rights against the insurer in the situation where there has been a complete failure to defend, then such damages should not include attorneys' fees when something less has occurred—namely, an improper defense.

The rationale for our conclusion may be stated more broadly and in much the same way as our high court did in *Lowell.* Tortfeasors ordinarily do not bear this particular increased burden in damages and their victims do not ordinarily enjoy this complete a recovery in damages for their injuries.[10] We see no sound reason in social policy why insurance companies who are tortfeasors should be singled out for this discriminatory treatment. If this is to be done, the Legislature would appear to be the appropriate vehicle. Therefore, we will modify the judgment by reducing the attorneys' fees award therein from $47,780 to $2,780.[11]

### DISPOSITION

The judgment is modified by reducing the attorneys' fees awarded therein from $47,780 to $2,780. As so modified, it is affirmed. Each party to this appeal shall bear its costs on appeal.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied October 23, 1978, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1978. Mosk, J., was of the opinion that the petition should be granted.

---

[10]It can be argued that the recovery of attorneys' fees in this situation does not constitute a recovery of damages at all, but is instead an award of costs. (See *Parker* v. *City of Los Angeles* (1974) 44 Cal.App.3d 556, 566 [118 Cal.Rptr. 687].)

In *Young* v. *Redman* (1976) 55 Cal.App.3d 827, 833-839 [128 Cal.Rptr. 86], another local division of this court reversed an award of attorneys' fees as sanctions for the maintenance of an unfounded action or defense.

[11]The $2,780 in remaining attorneys' fees are unchallenged in Harbor's brief and should be clearly recoverable under the reasoning of *Lowell, Mustachio, McDowell* and other cases.