LARRABURU BROTHERS, INC., a corporation, Harold E. Paul and Harold E. Paul, Jr., Appellants,

v.

ROYAL INDEMNITY COMPANY, a corporation, Appellee.

No. 77–2229.

United States Court of Appeals, Ninth Circuit.

Sept. 12, 1979.

John Wynne Herron, San Francisco, Cal., Marshall W. Krause, Larkspur, Cal. (argued), for appellants.

David C. Rust, Sacramento, Cal., for appellee.

Before CHOY and KENNEDY, Circuit Judges, and BEEKS,* District Judge.

KENNEDY, Circuit Judge:

■ Under California law, the covenant of good faith and fair dealing, which is implied in the contract between an insurance company and the insured, requires that the insurer take reasonable action to settle a claim within the policy limits when there is a substantial likelihood of recovery against the insured of an amount in excess of policy limits should the claimant proceed to trial. The question presented by this appeal is whether an insurance company satisfies that duty if it pays the full amount of a verdict against the insured, including the amount in excess of the policy limits, before the judgment against the insured becomes final, where the earlier failure to settle within policy limits injures the insured's credit standing, results in economic injury by causing the insured to enter bankruptcy, and produces other consequential damage.

This is an interlocutory appeal from the granting of a summary judgment motion against three of four plaintiffs in a damage action against a liability insurance carrier. We granted permission to file this appeal pursuant to 28 U.S.C. § 1292(b). Proceedings below were stayed by the district judge pending our determination of the appeal. Jurisdiction in the district court was based upon diversity of citizenship, 28 U.S.C. § 1332(a), and California law controls our disposition of the case. On appeal from the summary judgment motion, we accept plaintiffs' version of the facts as true, although we note defendant vigorously contests several important aspects of plaintiffs' exposition.

A truck belonging to appellant Larraburu Brothers, Inc., a San Francisco bakery, struck and severely injured a child. Suit was filed on behalf of the child against Larraburu seeking $3,000,000 damages. The bakery had two liability insurance carriers, Royal Indemnity Company (Royal) and Mission Insurance Company (Mission). Royal's obligation was for $250,000 of primary coverage and Mission's obligation was for $1,000,000 of excess coverage. Royal was aware of the limits of Larraburu's coverage. According to plaintiffs' version, which will not be detailed at length, Royal breached its duty of good faith and fair dealing by refusing to enter into reasonable settlement negotiations and failing to take steps which would have led to a settlement in excess of the primary coverage but well within limits of the total coverage.[1] On October 15, 1974, following a jury trial, judgment was entered in a state superior court against Larraburu for $1,984,200. On defendant's motion for new trial, the trial court issued an order granting a new trial as to damages, subject to the condition that the motion would be denied if plaintiff consented to a $550,000.00 reduction in the verdict and judgment. Plaintiff agreed, thus reducing the judgment to $1,439,200. Mission tendered its $1,000,000, and Royal paid the remainder of the judgment, $439,200.

* Honorable William T. Beeks, Senior Judge, United states District Court for the Western District of Washington, sitting by designation.

1. Larraburu in its brief summarized its version of some of Royal's settlement conduct:

1. The injured child's attorney had offered in writing to settle the injury suit for policy limits. Royal failed to respond to this offer.

2. Appellants were not allowed to inspect Royal's claims file on the injury case.

3. Without doubt, the injury case had a value in excess of Royal's limits, yet Royal did not tender its limits so that the excess carrier, Mission, could commence negotiations within the total available limits.

4. Royal failed to enter into any meaningful settlement negotiations with the personal injury plaintiff.

5. Prior to the trial of the injury action, appellants apprised Royal of the real possibility of a judgment in excess of policy limits and they demanded settlement tenders to policy limits.

6. An offer to settle the injury suit for $500,000 was not even communicated to the excess carrier.

7. Mission's demand that Royal tender its limits received no response from Royal.

8. Royal's offer of $75,000 was characterized by the settlement conference judge as "entirely unrealistic" and "grossly inadequate."

The instant suit was then commenced against Royal. Mission sued for one million dollars ($1,000,000) in damages by reason of having to tender its policy limits. Its claim is not before us on this appeal. Joining Mission as plaintiffs below were Larraburu Brothers, Inc., Harold Paul and Harold Paul, Jr., Larraburu's principal shareholders and officers, each of them named insureds of the policy with Royal. These parties are the appellants here. Larraburu sought damages for losses to the business, and the individual appellants sought damages for loss of their livelihood and emotional distress. All appellants sought punitive damages as well.

According to appellants, at the time Royal refused to enter into meaningful settlement negotiations, it had been expressly advised that Larraburu's business was in a precarious financial situation and that news of any judgment against it in excess of insurance coverage could be expected to start a creditor's run which would destroy the business. Royal also allegedly refused Larraburu's request to announce publicly, after the initial verdict and judgment had been entered, that it would accept responsibility for the amount of the judgment over the combined insurance coverage, assuming that the excess judgment was upheld. According to Larraburu, the excess judgment was noticed by the financial community, causing creditors to refuse additional credit and to call in Larraburu's obligations at once. Larraburu claims that as a proximate cause of Royal's conduct, it was sent into bankruptcy proceedings and injured in excess of $2,000,000. According to Larraburu, had Royal not acted in bad faith toward the interests of its insureds and Mission, the litigation would have been settled within policy limits and no damage to Larraburu would have occurred; in the alternative, plaintiffs argue that had Royal announced it would hold Larraburu harmless for the excess judgment if the judgment survived a new trial motion and a possible appeal, the consequential damages would not have occurred.

The principal point contested by the parties is whether or not Royal cured any breach of its duty, or, alternatively, prevented any breach of its duty from occurring, by its paying the full amount of the primary coverage plus the excess of the judgment over the total coverage before the judgment became final. Royal contends that its actions in this regard exonerated it from any liability to the Larraburus for its handling of the case. As noted, Royal's potential liability to Mission is not in issue at this point. For purposes of this decision, we assume the plaintiffs can prove they sustained consequential damages proximately caused by Royal's conduct, although that critical aspect of the case is by no means demonstrated persuasively on the record developed at this stage of the proceedings. In addition, if payment of the excess before a final judgment was entered did not satisfy Royal's duty to plaintiffs, then we assume plaintiffs can prove there was an offer to settle within policy limits which Royal refused, or that other aspects of Royal's settlement conduct were unreasonable and actionable under California law.

Although the precise question presented in this case appears to be one of first impression, the underlying principles of California law are well established. A concise statement of those principles appears in *Northwestern Mutual Insurance Co. v. Farmers Insurance Group,* 76 Cal.App.3d 1031, 1041, 143 Cal.Rptr. 415, 420 (1978), where the court said:

> It is well established in this jurisdiction that a liability insurer owes its insured a duty to effect reasonable settlement of a claim against the insured within its policy limits when there is a substantial likelihood of recovery in excess of those limits and that upon breach of that duty by the insurer, the insured has a right of action against the insurer for damages proximately caused thereby. (citations omitted).

The California Supreme Court, in *Crisci v. Security Insurance Co. of New Haven,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967), described the relevant principles in more detail:

The liability of an insurer in excess of its policy limits for failure to accept a settlement offer within those limits was considered by this court in *Communale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883. It was there reasoned that in every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement; that it is common knowledge that one of the usual methods by which an insured receives protection under a liability insurance policy is by settlement of claims without litigation; that the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; that in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests; and that when "there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim." (50 Cal.2d at p. 659, 328 P.2d at p. 201).

*Id.* 66 Cal.2d at 429, 58 Cal.Rptr. at 16, 426 P.2d at 176.

■ The test of the insurer's conduct is one of reasonableness. The court in *Austero v. National Casualty Co.,* 84 Cal.App.3d 1, 29, 148 Cal.Rptr. 653, 671, 672 (1978), stated:

[T]he ultimate test of liability for any alleged tortious breach of the implied covenant of good faith and fair dealing in third party cases is the reasonableness of the insurer's decision to reject the third party settlement offer. . . . In other words, if a prudent insurer operating without policy limits would evaluate the case as likely to produce a judgment for a figure less than the offer, then it would not be unreasonable to refuse the offer even though the subsequent trial resulted in a judgment equal to or greater than the offer which also exceeded the policy limits.

■ Once having breached its duty to the insured, the insurer is responsible to the insured both in contract and in tort; and, as a tortfeasor, its liability extends to "all detriment caused whether it could have been anticipated or not." *Crisci, supra,* 66 Cal.2d at 433, 58 Cal.Rptr. at 18, 426 P.2d at 178. As the court in *Neal v. Farmers Insurance Exchange,* 148 Cal.Rptr. 389, 397, 582 P.2d 980, 988 (1978), stated:

[A]n insurer's breach of its duty of good faith and fair dealing renders it liable for any damages which are the proximate result of that breach. In the so-called "third party" situation, of which *Communale* and *Crisci* are representative, the breach of duty may have as its proximate result the entry of a judgment in excess of policy limits against the insured. . . . Only damages proximately resulting from the breach—such as consequent economic loss or emotional distress, for example— are recoverable as compensation therefor. (citations omitted).

The parties differ as to how these general principles apply to the case before us. Royal states the heart of its argument as follows:

Whether or not bad faith ever occurs is determined by the existence of an excess judgment. . . . If the insurer pays the judgment before it becomes final, bad faith conduct never occurs. . . . It is only the failure to pay the excess judgment after it becomes final which gives rise to a right of action against the insurer. By paying the excess verdict, Royal acted in good faith and cannot now be sued.

The essence of the tort, according to Royal, is exposing the insured to the possibility of liability in excess of the policy limits (or any amount over the policy limits which the insurance company is not willing to pay) as a result of the insurer's unreasonable refusal to settle. The possibility of such liability arises, claims Royal, only when a final judg-

ment has been entered against the insured for more than the policy limits before the insurer has agreed to pay the excess amount. "Final judgment," as Royal uses the term, means a judgment not still "pending" under California law, Cal.Civ.P.Code § 1049,—that is, a judgment in which no further proceedings—such as motions for new trials or appeals—can be had.[2]

Royal correctly notes that California courts have allowed recovery of damages in amounts other than simply the amount of the excess judgment, for example, economic loss (*Crisci, supra*) physical impairment (*Silberg v. California Life Insurance Co.,* 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974)); emotional distress (*Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973)), and punitive damages *(Silberg, supra).* It contends, however, that these damages were awarded not simply because of the insurer's unreasonable settlement behavior, but also because the insured, as a result of entry of final judgment was liable for an amount in excess of the policy limits. Thus, the emotional distress in *Crisci,* for example, was caused by the insured's liability for a final judgment in excess of policy limits; the insured had to sell her personal belongings to pay the excess judgment, became indigent, and had various medical problems. Although the opinions are not unequivocal, Royal contends that damages for emotional distress in these cases were measured from the date of the final judgment, not from the date of the earlier unreasonable failure

to settle. Similarly, the physical impairment in *Silberg* was caused by the failure of the insured to have adequate funds to pay for his medical expenses as a result of the insurer's failure to pay the excess judgment. Royal concludes, correctly as far as we have been able to determine:

> Every California appellate decision dealing with the question of wrongful failure to settle is distinguishable from the instant case in that: (1) the insurer did not pay the excess judgment (here, Royal Indemnity Company paid the excess judgment); and (2) the judgment against the insured was "final." (Here, Royal paid the judgment before it became final.) (*Ivy v. Pacific Automobile Ins. Co.* (1958) 156 C.A.[Cal.App.]2d 652 [320 P.2d 140]; *Communale v. Traders & General Ins. Co.* (1958) 50 C.[Cal.]2d 654 [328 P.2d 198]; *Davy v. Public National Insurance Co.* (1960) 181 C.A.[Cal.App.]2d 387 [5 Cal.Rptr. 488]; *Kinder v. Western Pioneer Insurance Co.* (1965) 231 C.A.[Cal. App.]2d 894 [42 Cal.Rptr. 394]; *Critz v. Farmers Insurance Group* (1964) 230 C.A.[Cal.App.]2d 788 [, 41 Cal.Rptr. 401]; *Crisci v. Security Ins. Co.* (1967) 66 C.[Cal.]2d 425 [, 58 Cal.Rptr. 13, 426 P.2d 173]; *Garner v. American Mutual Liability Ins. Co.* (1973) 31 C.A.[Cal.App.]3d 843 [, 107 Cal.Rptr. 604]; *Johansen v. Calif. State Auto. Assn. Inter-Insurance Bureau* (1975) 15 C.[Cal.]3d 9 [123 Cal.Rptr. 288, 538 P.2d 744]; *Cain v. State Farm Mutual Auto Ins. Co.* (1975) 47 C.A.[Cal. App.]3d 783 [121 Cal.Rptr. 200]).[3]

2. Initially, we have some doubts whether the defendant is correct in asserting that plaintiff incurred no binding liability immediately after the jury verdict and trial court judgment were rendered. *See* Cal.Civ.P.Code § 917.1. The fact that an action is still "pending" does not automatically mean that the plaintiff may not execute on the money judgment pending outcome of that appeal. Because of our resolution, we find it unnecessary to address this issue in more detail.

3. The closest a California court has come to stating Royal's position was in *Austero v. National Casualty Co.,* 84 Cal.App.3d 1, 26–27, 148 Cal.Rptr. 653, 670 (1978):

   [G]enerally if the third party claimant has made a reasonable offer to settle within the

policy limits, and, given the nature of the disclosure to the insured of the competent evidence of the personal or property injury, if the insurer acts unreasonably by giving unequal or insufficient consideration to the interests of the insured and refuses to settle, *and if then the third party recovers a judgment against the insured in excess of the policy limits,* the cases hold the insurer liable *for the full amount of the judgment previously recovered by the third party* as well as for accompanying damages for emotional distress suffered by the injured, and, in appropriate cases, exemplary damages.

(Emphasis added) (citations omitted). Plainly the court was only attempting a general summary of the relevant law, and was not required to refine its statement in light of a dispute such

Royal also claims support from a line of California cases holding that for purposes of determining when the statute of limitations begins to run and when a plaintiff may file a lawsuit, the insured's cause of action arises when he incurs a binding final judgment in excess of the policy limit. *Brown v. Guarantee Insurance Company,* 155 Cal.App.2d 679, 319 P.2d 69 (1957); *Communale v. Traders and General Insurance Company,* 50 Cal.2d 654, 328 P.2d 198 (1958). It concludes from this section that Larraburu could not have brought suit until the original action was finally determined, by appeal, by plaintiff's acceptance of the remittitur, or otherwise.

■ Royal's view is consistent; but for the reasons stated below, we think another analytical framework more accurately discloses the result which the California courts would reach in this case. What for us is the controlling conception of this tort can be stated simply: It is the unreasonable failure to settle the claim, not simply the failure to pay all of the ultimate judgment, which is the breach of the insurer's duty and causes injury. The insurer's conduct at the time a reasonable settlement could have been effected determines whether the insurer has breached its duty to the insured, and not, on the other hand, whether the insurer pays the excess before a final judgment is entered.[4]

This is not to deny a relation between the final disposition of the original suit and the insured's claim of unreasonable failure to settle. Indeed, Larraburu and Royal say that where a final judgment is within policy limits, there is no bad faith failure to settle, no tortious breach of duty, and no compensable damages; the earlier refusal to settle is not unreasonable, no matter how it appeared previously. *Cf. Johansen, supra,* 15 Cal.3d at 19, 123 Cal.Rptr. at 294, 538 P.2d at 750 ("Clearly, if defendant's belief that the policy did not provide coverage in the instant case had been vindicated, it would not be liable for damages flowing from its refusal to settle . . . .") We are not willing to accept this formulation as a general rule, for to say that a subsequent verdict within policy limits always exonerates an insurer for the consequences of an earlier failure to settle seems to us an unwarranted restriction on the insurer's duty to the insured under California law. The point need not be resolved here, for an excess verdict was rendered.

The California courts have recognized that the fact of an excess verdict may have great evidentiary value in determining whether the original refusal to settle was unreasonable. As the court in *Crisci* stated:

> The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive,

as that before us. In addition, the court's statement is not logically inconsistent with the view we adopt in this case.

*Reichert v. General Insurance Co.,* 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377 (1968), does not support Royal's claim that the injury was not compensable. Unlike plaintiff's claim in *Reichert,* Larraburu's claim did not arise until after February 6, 1975, subsequent to the filing of the petition for bankruptcy, which was filed November 8, 1974. Moreover, Larraburu's claims were not based solely on breach of contract; they were also based on tort theories. Royal does not question that Larraburu, Inc., is a proper party plaintiff, and therefore we do not face the question whether or not the corporate cause of action is properly assigned to creditors or a trustee in bankruptcy. *Cf. Reichert, supra; Brown v. Guarantee Insurance Co., supra,* 155 Cal.App.2d 679, 319 P.2d at 77.

Also, unlike the plaintiff in *Reichert,* Larraburu alleges that Royal's conduct damaged its reputation and credit, and that Royal's conduct led to its bankruptcy, which caused financial injury. *Reichert* thus does not as a matter of law prevent Larraburu from demonstrating that Royal's conduct caused the damages it seeks to recover.

4. Plaintiff appears to be correct that in *Sharp v. Automobile Club of Southern California,* 225 Cal.App.2d 648, 37 Cal.Rptr. 585 (1964), the court permitted a plaintiff to sue its insurer for damages resulting from unreasonable failure to pay expenses covered under the policy, even though the insurer offered to pay the disputed bill, including the amount in excess of policy coverage, within a few days after the plaintiff's lawsuit was filed. *Id.* at 653, 37 Cal.Rptr. 585. Although this "first party" case is relevant to third-party cases such as this one, *Sharp* by itself does not require the result we reach, as the court did not focus on the problem before us.

furnishes an inference that the value of the claim is the equivalent to the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim.

66 Cal.2d at 431, 58 Cal.Rptr. at 17, 426 P.2d at 177. *Accord, Twentieth Century-Fox Film Corp. v. Harbor Insurance Group*, 85 Cal.App.3d 105, 149 Cal.Rptr. 313, 317 (1979).

■ It is the evidentiary aspect of the earlier final judgment that makes it the critical point, in California cases, marking the accrual of the cause of action against the insurer. Given the central nature of the final outcome of the original suit in determining whether the refusal to settle was reasonable, holdings that the plaintiff may not bring a bad faith action until a final judgment is entered in the original suit are understandable. *See, e. g., Brown v. Guarantee Insurance Company, supra.* Similarly, the statute of limitations on claims such as Larraburu's begins to run from the date of the final judgment. *See, e. g., Communale v. Traders and General Insurance Co., supra,* 50 Cal.2d at 662, 328 P.2d at 203 ("[The insured's] cause of action against the insurer arose on August 13, 1950, when the judgment in the bodily injury action became final.") These statements reflect the fact that until there is a final disposition in the original lawsuit, a plaintiff may not know whether he has a colorable claim that the insurer's earlier refusal to settle was unreasonable. Our theory of the controlling California tort law is consistent with these rules. That a plaintiff must await final disposition of the original

action to determine whether he has a colorable claim against the insurer does not alter the fact that the conduct alleged to be unreasonable occurred at an earlier stage of the original lawsuit, and that the unreasonable conduct can be a proximate cause of injury before the final disposition as well as after.

■ An unreasonable refusal to accept a settlement offer causes the insurer to be liable for consequential damages, such as mental suffering or economic loss, unless the insurer takes some action to eliminate the injury its earlier conduct otherwise would have caused. In the case before us, assuming Larraburu's version of the facts to be true, Royal's refusal to guarantee to creditors its payment of the excess of the ultimate judgment, while of course reserving the right to challenge the verdict, was tortious conduct if the failure to guarantee was unreasonable in light of the earlier management of the settlement negotiations.[5] Damages in refusal to settle suits are not confined to the amount of the excess judgment. It follows from this that the insurer cannot avoid liability by eventually paying the excess of the judgment before it becomes final, if damages in addition to the excess have been caused proximately by the failure to effect settlement in a reasonable manner. The liability for breach should be co-extensive with the duty imposed. The duty is to settle where reasonably necessary to protect the interests of the insured, not simply to agree, after the fact of the excess judgment and sometimes long after injury arises from unreasonable management of the settlement negotiation, to hold the insured harmless.[6]

**5.** The reasonableness of the refusal to take such a step depends on whether, at that time, the insurer should reasonably have estimated that if there was an excess judgment it would be held responsible to pay it; that is, that a court would find its settlement conduct unreasonable.

**6.** We do recognize that California cases suggest that the insurer, in determining whether a settlement offer is reasonable and should be accepted, is not obliged to consider the mental anguish, or the possible financial hardship, which refusing the offer and going to trial

might entail. Rather, the insurer should compare the settlement offer with its best estimate of the amount of a final judgment after trial and appeals. Thus, the court in *Twentieth Century-Fox Film Corp. v. Harbor Insurance Co.,* 85 Cal.App.3d 105, 111–112, 149 Cal.Rptr. 313, 317 (Ct.App.1978), said: "The only permissible consideration in evaluating the reasonableness of a settlement offer is whether in light of the probable liability of the insured, the ultimate judgment is likely to exceed the offer." (Citations omitted). *See also Austero, supra,* 84 Cal.App.3d 1, 148 Cal.Rptr. at 672.

The entry of summary judgment against appellants is reversed, and the case is remanded for further proceedings consistent with this opinion.[7]

---

**7.** The facts of *Kricar v. General Accident, Fire and Life Assurance Corp., Ltd.,* 542 F.2d 1135 (9th Cir. 1976), resemble those of the instant case. After refusing an offer to settle, a judgment against the insured in excess of policy limits was rendered. Before it became final, the insurer settled with the injured party and paid the full amount of the settlement. Interpreting Oregon law, the court noted that actions for refusal to settle in Oregon were considered contract actions. It then held that "General's [The insurer] satisfaction of the entire judgment negates any finding of bad faith. General did behave as if it were liable for the entire judgment which was rendered." *Id.* at 1136.

The result reached in *Kricar* appears somewhat at odds with the rationale of our holding. In any event, the case was decided under Oregon, not California, law. In addition, since the action was considered a contract action, arguably the only damages from a breach foreseeable at the time of contracting was exposing the insured to liability beyond the amount of the policy limits. Finally, a subsequent decision under Oregon law seems to undermine a broad reading of *Kricar.* In *Portland General Electric Co. v. Pacific Indemnity Co.,* 574 F.2d 469 (9th Cir. 1978), the plaintiff was self-insured for $25,000 of liability, had primary liability insurance for $250,000, and excess insurance for *any* excess liability over $275,000. The primary insurer refused to settle a claim for $125,000; after a trial the case was settled for $459,000. The court held that the insured, as well as the excess insurer, had a claim against the primary insurer for unreasonable failure to settle, even though it was covered for the amount of any excess liability. Thus, *Kricar* cannot be read as an unequivocal statement that, under Oregon law, as long as the insured is protected from excess liability before a final judgment is entered, he has no claim against the insurer based on unreasonable settlement conduct.