[Civ. No. 40353. First Dist., Div. Four. May 9, 1978.]

TRI-DELTA ENGINEERING, INC., Plaintiff and Respondent, v. INSURANCE COMPANY OF NORTH AMERICA et al., Defendants and Appellants.

754

## COUNSEL

Robert T. Cresswell and Michael James Moriarty for Defendants and Appellants.

Thomas O. Hurst and Thomas R. O'Day for Plaintiff and Respondent.

## OPINION

**WILSON, J.**\*—Defendants-appellants Cooksey, Battersby & MacBeth, a corporation (hereafter referred to as C, B & M), and Peter Donovan, appeal from a judgment in Santa Clara County Superior Court following a jury verdict in favor of plaintiff-respondent Tri-Delta Engineering, Inc. (hereafter referred to as respondent) in an action brought by respondent against appellants and Insurance Company of North America (hereafter INA) for breach of contract, negligent misrepresentation, fraud, and breach of duty of good faith and fair dealing, in connection with an insurance policy issued by INA through appellants as brokers and agents.

---

\*Assigned by the Chairperson of the Judicial Council.

Appellant Peter Donovan (hereafter Donovan) was an insurance salesman employed by appellant C, B & M, an insurance brokerage firm. C, B & M had an agency agreement with INA, permitting it to write commercial insurance for INA.

In 1973, Donovan learned that INA had a package insurance program for machine shops. He contacted Louis Rizzo, president of respondent Tri-Delta Engineering, to find out whether Rizzo was interested in getting a quote for this coverage. Rizzo responded affirmatively, stating that he was interested in an "all risk" policy. Donovan stated that he would quote him such a policy, which included fire and theft.

At this point there is a conflict in testimony: Donovan stated that he phoned INA and simply asked them for an "all risk quote" for Rizzo's shop, believing this to mean coverage which included, among other things, theft. However, according to David Caldwell, the INA representative with whom Donovan spoke, Donovan asked for "all risk coverage with theft." Caldwell thereupon inquired whether the shop had a burglar alarm system, to which Donovan replied "no." Caldwell then stated that crime coverage could not be included, and completed the application excluding such coverage.

After obtaining the quote, Donovan listed all the items of coverage on a worksheet which he showed to Rizzo. Theft was specifically included as one of these items. Thereafter the policy was issued and Rizzo began paying premiums on the policy. Neither Donovan nor Rizzo read the policy.

On June 20, 1974, Rizzo discovered that his shop had been burglarized and a number of items were missing. Rizzo immediately notified Donovan, who assisted him in filing a claim with INA for the loss. When INA refused to honor the claim, Donovan read the policy and discovered for the first time that the policy excluded theft. He then wrote a letter to INA, explaining that he had represented to Rizzo that the policy included theft, and requesting the company to backdate the policy to include theft coverage. INA refused.

Respondent thereupon filed suit against INA, C, B & M and Donovan (hereafter collectively referred to as "defendants"), alleging breach of contract, fraud, negligent misrepresentation and bad faith refusal to pay policy benefits.

The case went to trial and the jury were instructed that respondent was seeking compensatory damages under four alternative theories: (1) breach of contract against all defendants; (2) fraud against INA only; (3) negligent misrepresentation against all defendants; and (4) bad faith against INA only. They were also told that a finding of fraud or bad faith on the part of INA would warrant an award of punitive damages against it. Finally, the jury were instructed that if they found Donovan was a duly constituted agent of INA, named INA as his principal, contracted in its name with respondent, and "did not exceed his express authority," then only INA would be responsible to the respondent.

The jury returned with a verdict that is reproduced fully below:

PLEASE CHECK THE APPROPRIATE BOXES:

We, the jury of the above entitled cause find as follows:

As to the Plaintiff and the Defendant Insurance Company of North America:

☒ The jury finds in favor of Plaintiff and against defendant Insurance Company of North America and assesses compensatory damages in the amount of $15,500.00

☒ The jury further finds and assesses Punitive damages in the amount of $11,089.31

☐ The jury finds in favor of Defendant Insurance Company of North America and against Plaintiff.

As to Plaintiff and Defendants Cooksey, Battersby & MacBeth & Peter Donovan:

☒ The jury finds in favor of Plaintiff and against the defendants Cooksey, Battersby & MacBeth & Peter Donovan and assesses compensatory damages in the amount of $15,500.00

☐ The jury finds in favor of Defendants Cooksey, Battersby & MacBeth & Peter Donovan and against Plaintiff.

The jurors were then dismissed. Counsel for the respondent interpreted this verdict as awarding $15,500 compensatory damages against each defendant plus $11,089.31 punitive damages against INA, whereas counsel for the defendants interpreted the verdict as awarding a total of $15,500 in compensatory damages jointly and severally against INA, C, B & M and Donovan. Immediately after the jury were discharged, the foreman had informally indicated that the jury intended to award a total of $31,000 in compensatory damages. Judgment on the above verdict was entered on September 3, 1975.

The controversy over the proper interpretation of the verdict continued: All parties involved filed motions for judgment notwithstanding the verdict and motions for new trial. Additionally respondent filed a "motion for nunc pro tunc order to correct judgment to conform to jury verdict." On September 15, 1975, over the objection of the defendants, the jury was reconvened to answer special interrogatories about their intention in arriving at the verdict. The jurors all concurred in the following explanation offered by the foreman: "We figured that according to the figures given us that the loss itself was $11,931 and there was a $3,000 inflation figure. $10,000 loss of business figure, $1,000 interest, 5700 in lawyer's fees up to the start of trial which comes to $30,800 and some-odd dollars, which we rounded out to $31,000. [¶] We divided 31,000 by 2 because we thought both parties were to a greater or lesser extent guilty of misrepresentations, negligence. So we thought both parties should share in the burden, so we divided it."

After a hearing on all the motions, the trial judge granted respondent's motion to correct the judgment. The judgment was amended such that the award of $15,500 against C, B & M and Donovan was made "*in addition* to the damages assessed against defendant [INA]." (Italics added.) The judge denied the motions of INA for judgment n.o.v. and for new trial and the motion of C, B & M and Donovan for judgment n.o.v. However, the latter's motion for new trial was granted unless respondent agreed to a reduction in his award from $15,500 to $12,650, in that the jury improperly included $2,850 in attorney's fees "which was contrary to law." Respondent consented to the reduction.

Originally both INA and C, B & M and Donovan appealed. However, INA's appeal was subsequently dismissed by this court for failure to file an opening brief, and respondent informs us that INA has since paid the damage award assessed against it. We therefore have before us only the

appeal of appellants Cooksey, Battersby & MacBeth, the brokerage agency, and Donovan, the salesman.

We have some question about the procedure in this case which led to the amended verdict and judgment. It is true that a trial court has both the power and the duty to make the judgment conform to the intention of the jury, where such is clear from the language of the verdict considered in connection with the pleadings, the evidence and the instructions. (*Telles* v. *Title Ins. & Trust Co.* (1969) 3 Cal.App.3d 179, 187 [83 Cal.Rptr. 444]; *Curtis* v. *San Pedro Transp. Co.* (1935) 10 Cal.App.2d 547, 548 [52 P.2d 528].) However, in *Telles* the court disapproved of using jurors' affidavits to construe or interpret a verdict and we can see no essential difference in bringing the jurors back to court and orally interrogating them concerning what they intend.

*Estate of Woehr* (1958) 166 Cal.App.2d 4 [332 P.2d 818], and *Fennessey* v. *Pacific Gas & Elec. Co.* (1938) 10 Cal.2d 538 [76 P.2d 104], both involved interrogations of the jury after a verdict had been delivered. However, in *Woehr* the jury was simply asked about its obviously erroneous answer to special interrogatories which related to issues on which the trial court had directed a verdict; while in *Fennessey* the trial court inquired of the jurors at the time the verdict was returned whether it correctly reflected their intention.

■ However, treating the trial court's action in this case as the exercise of its unquestioned power to interpret the verdict in accordance with the pleadings, evidence and instructions, as occurred in *Snodgrass* v. *Hand* (1934) 220 Cal. 446 [31 P.2d 198], we still face the question of whether the judgment, based on the verdict as so construed, can be allowed to stand. Appellants contend that the judgment contains findings which are irreconcilable, uncertain and contrary to the law and the instructions, and that the trial judge should therefore have granted their motion for a new trial. We agree.

The verdict, as interpreted by order of the court, assesses two separate and individual awards. The first award is against INA for $15,500 in compensatory damages and $11,089.31 in punitive damages. The second award is against C, B & M and Peter Donovan for $15,500 in compensatory damages, which the court expressly determined to be in addition to the award against INA. ■ While the trial court has the power to interpret the verdict, nevertheless where the verdict is still

ambiguous, hopelessly inconsistent or incomprehensible, reversal is required. (*Mixon* v. *Riverview Hospital* (1967) 254 Cal.App.2d 364 [62 Cal.Rptr. 379].) The jury's verdict in this case, when considered in connection with the evidence and the instructions, cannot be reconciled in accordance with any theory of law.

██ The only theory which will support the jury's award of both compensatory and punitive damages against INA is that the jury found that respondent's loss was actually covered by the contract of insurance which INA issued through appellants' agency and that INA breached this contract and was guilty of bad faith in failing to pay the claim.

The jury was instructed that it could find against INA on the basis of fraud, but not against appellants; and, that it could find against all defendants on the basis of negligent misrepresentation. It is difficult to perceive the theories upon which these instructions could have been based. Our review of the record establishes that there was no basis upon which INA could be held liable for either intentional fraud or negligent misrepresentation, other than as a principal responsible for the conduct of appellants as agents. No representative of INA, other than appellants, had any contact whatsoever with respondent which could reasonably be interpreted as having led to respondent's purchasing the policy in question. Thus any verdict against INA, based on either intentional fraud or negligent misrepresentation, could not result in separate judgments, but would have had to result in a joint and several judgment against both INA and appellants for the full amount of respondent's compensatory damages.

Moreover these theories of recovery would not authorize the punitive damage award against INA. Punitive damages are not recoverable for negligent misrepresentation (see 23 Cal.Jur.3d, Damages, § 125, p. 250, and cases cited therein); and a principal is not liable for punitive damages on account of the tort of an agent, except under special circumstances not present here. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 854-857, pp. 3146-3148.)

██ Since the award against INA must therefore be based on findings of breach of contract and bad faith, it follows that it should have been for respondent's entire compensatory damages, and appellants, as agents, cannot be liable. (Rest.2d Agency, § 320; *Walker* v. *Home Indemnity Co.* (1956) 145 Cal.App.2d 318, 325 [302 P.2d 361].) Neither can the agents be

held separately liable under the theory of either negligent or intentional misrepresentation, since, in view of the jury's necessarily implied finding that INA was bound by contract to provide theft coverage, Donovan's statement that such coverage existed was not false; hence an essential element of each tort was missing.

Respondent poses two additional theories under which it contends the verdict can be justified. First, it postulates that appellants could be liable for a separate breach of contract, namely, Donovan's oral promise, made subsequent to INA's denial of liability, that if INA did not cover respondent's loss, then appellants would. ■ Under the long established rule, a party is not entitled to recovery upon a cause of action not pleaded, even if disclosed by the evidence. (*Weissensee* v. *Chronicle Publishing Co.* (1976) 59 Cal.App.3d 723, 729 [129 Cal.Rptr. 188]; *Barrere* v. *Somps* (1896) 113 Cal. 97, 102 [45 P. 177].) Not only did respondent fail to plead such a cause of action below, but it was never the subject of jury instructions or ever treated as within the scope of the issues. This theory, therefore, may not be accepted here.[1]

■ Secondly, respondent argues that appellants could be held liable for Donovan's breach of his implied warranty of authority. (Civ. Code, § 2342.) However, such a tort occurs only when the agent acts *without authority* or in excess of his authority (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 181, p. 778), and the measure of damages is the compensation plaintiff would have received had such authority existed. (Civ. Code, § 3318; *Kohlberg* v. *Havens* (1919) 41 Cal.App. 222 [182 P. 467].) Since the jury's verdict against INA constitutes an implied finding that Donovan in fact had actual or ostensible authority to bind it for theft coverage under the contract, such a breach could not have occurred.

We understand and sympathize with the efforts of the jury to spread the burden in this case. There was evidence from which it could have reasonably inferred that appellant Donovan was negligent in obtaining proper insurance coverage for respondent. This may well have motivated the trial court's desire to uphold the verdict.

---

[1] It is also noteworthy that appellants would be liable for respondent's entire compensatory damages for this breach, which when considered along with the jury's *additional* award of compensatory and punitive damages against INA, is inconsistent.

However, given the ultimate fact that coverage was found to exist, a verdict against appellants on account of any such negligence would necessarily have to be based on the costs incurred, and other consequential damage suffered by respondent in having to bring a lawsuit to establish such coverage. During the post-verdict proceedings there was brief mention of this theory, but such a cause of action was not set forth in the pleadings, developed by the evidence, or covered in the instructions. ■ ■■■ Under the circumstances here the trial court had essentially no choice but to grant appellant's motion for a new trial.[2]

The judgment as to appellants Cooksey, Battersby & MacBeth and Peter Donovan is reversed.

Rattigan, Acting P. J., and Christian, J., concurred.

---

[2]Upon appeal from a final judgment, an appellate court may review the propriety of an order denying a motion for new trial. (Code Civ. Proc., § 906; *Litvinuk* v. *Litvinuk* (1945) 27 Cal.2d 38, 42 [162 P.2d 8].) Although the trial court actually granted appellants' motion for new trial "unless [respondent] agrees to a reduction in his award, . . ." respondent's subsequent consent amounted to a denial of the motion. (Code Civ. Proc., § 662.5, subd. (b).)