637 F.2d 657
 LESLIE SALT CO., Plaintiff/Appellee,
v.
ST. PAUL MERCURY INSURANCE COMPANY, a corporation,
Defendant/Third PartyPlaintiff/Appellant,
FM Insurance Co., Ltd., a corporation, Third Party
Defendants/Appellees.
LESLIE SALT CO., Plaintiff/Appellant,
v.
ST. PAUL MERCURY INSURANCE CO., a corporation, Defendant,
and
FM Insurance Company, Ltd., a corporation, Defendant/Appellee.
 Nos. 78-2576, 78-2649.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 7, 1980.
Decided March 30, 1981.
 
 Augustus Castro, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., on brief; James A. Richman, San Francisco, Cal., for St. Paul.
 Chickering & Gregory, San Francisco, Cal., on brief; James E. Burns, San Francisco, Cal., for Leslie Salt.
 Robins, Davis & Lyons, Minneapolis, Minn., on brief; Robert Wattson, Minneapolis, Minn., for FM Insurance.
 Appeal from the United States District Court for the Northern District of California.
 Before WRIGHT and POOLE, Circuit Judges, and CRAIG, Senior District Judge.*
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Upon petition for rehearing, the opinion filed on Octob er 29, 1980 is withdrawn and replaced by the following disposition.
 
 
 2
 We must decide whether the trial court correctly ruled (1) that Leslie's loss was covered by its policy with St. Paul and (2) that St. Paul breached its duty of good faith by denying coverage and forcing Leslie to litigate. We also must determine if the trial court properly calculated damages and attorneys' fees. We affirm on all counts.
 
 FACTS
 
 3
 Leslie manufactures salt in Port Hedland, Australia. Part of the process entails removing salt from seawater and stacking it for drying. Stacking is done with a radial stacker, a huge machine which moves along a rail collecting salt from the ground and, in a circular motion, deposits it in piles.
 
 
 4
 On August 15, 1973 Leslie employees noticed a bend in the rail. Having repaired it, they drove the stacker on a test run. The stacker buckled, collapsed and was totally destroyed. Leslie promptly notified St. Paul of the loss. Citing a policy provision which excludes coverage for damage to property while being repaired,[1] St. Paul declined the claim. Leslie sought reconsideration, but the claim was again refused.
 
 
 5
 Leslie sued to recover (1) on the policy for loss of the stacker and (2) for all losses resulting from St. Paul's wrongful refusal to pay the claim promptly. The jury found that St. Paul's policy covered the loss and St. Paul acted in bad faith in refusing the claim.
 
 DISCUSSION
 Standard of Review
 
 6
 We shall not disturb the jury's factual findings unless they are clearly erroneous. F.R.Civ.P. 52(a). The correct construction of a contract provision, such as a specific exclusionary clause is "a question of law subject to our de novo review." Transport Indemnity Co. v. Liberty Mutual Insurance Co., 620 F.2d 1368, 1370 (9th Cir. 1980); State Farm Mutual Insurance Co. v. Partridge, 10 Cal.3d 94, 100, 109 Cal.Rptr. 811, 815, 514 P.2d 123, 127 (1973). We usually defer to the construction of state law by a district judge sitting in that state. The district court's determination will be accepted on review unless shown to be clearly wrong. Clark v. Musick, 623 F.2d 89, 91 (9th Cir. 1980).
 
 The Exclusions
 
 7
 St. Paul provided Leslie with "all-risk" coverage, i. e., it insured against loss from any cause whatsoever except those expressly excluded. Two of those exclusions are relevant here, and are reproduced in the margin.[2]
 
 
 8
 The vehicle exclusion is inapplicable. While St. Paul argues that the rail must have been injured by a bulldozer, this was not proved at trial. It is apparent that the jury's verdict for Leslie meant that it found the damage was not caused by a vehicle. The finding of fact is binding on us.
 
 The Repair Exclusion
 
 9
 St. Paul contends the loss fell within Exclusion I, set out in note 2, and hereafter referred to as the repair exclusion. Because this court independently reviews such exclusions as a question of law, we may briefly dispose of two subsidiary contentions. St. Paul argues that the trial court erred in admitting expert testimony on the nature of repair exclusions, and in instructing the jury to construe any ambiguity in Leslie's favor. Because we shall construe the provision, it is immaterial whether the jury heard the testimony or was incorrectly instructed.
 
 
 10
 Under California law exclusions in insurance policies must be "clear and unmistakable" and must not "violate the reasonable expectation of the parties." Middlesex Mutual Insurance Co. v. McCoy, 106 Cal.App.3d 282, 291, 165 Cal.Rptr. 45, 50 (1980). Similarly, this court has stated:
 
 
 11
 An "all risks" policy creates a special type of coverage extending to risks not usually covered under other insurance, and recovery under an "all risk" policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage.
 
 
 12
 C. H. Leavell & Co. v. Fireman's Fund Insurance Co., 372 F.2d 784, 787 (9th Cir. 1967). (Emphasis in original).
 
 
 13
 We have studied the repair exclusion and conclude that it does not expressly exclude this loss. The clause excludes from coverage loss sustained "while the property is actually being worked upon." At the moment of loss the stacker was being tested, not worked upon. The addition of the word "actually" to the clause compels this narrow reading.
 
 
 14
 We also conclude that the loss was not "caused by any repairing, adjusting or servicing." We construe this phrase to exempt from coverage those losses actively brought about by negligent repairs but not losses passively allowed to occur by inadequate repair. Thus, while it is true that successful repair of the rail might have prevented loss of the stacker, it does not follow that inadequate repair caused the loss. Damage to the rail caused the stacker to buckle.
 
 
 15
 This construction is required to give effect to the intent of the parties. Had Leslie's workmen not noticed the bend in the rail, or had they continued using the stacker despite it, the stacker would have collapsed and St. Paul would have been required to pay the resulting claim. It is unreasonable, and contrary to the parties' intent, to penalize the insured for attempting to make repairs and thereby save St. Paul from a substantial claim. We hold that the repair exclusion does not apply to the instant loss.[3]
 
 Measure of Damages
 
 16
 St. Paul argues that the court erred in instructing the jury:
 
 
 17
 In determining the actual cash value of the property damaged, it shall be as of the time of the commencement of the loss on August 15, 1973, and shall be ascertained according to such actual cash value with proper deduction for depreciation, however caused, and salvage value and shall in no event exceed what it would then cost Leslie to repair or replace the same with material of like kind and quality.
 
 
 18
 St. Paul cites Jefferson Insurance Co. v. Superior Court, 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880 (1970) for the proposition that "actual cash value" means fair market value, not cost of replacement. That rule, however, is not applicable when the insured property, a custom-built stacker, has no market. The law has long recognized that the actual cash value of property with no market may be measured with reference to the cost of replacement. See generally, Annotation, "Insurance-'Actual Cash Value,' " 61 A.L.R.2d 711 (1958); McCormick on Damages, (1935) at § 45.
 
 Duty of Good Faith
 Under California law
 
 19
 when an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing."
 
 
 20
 Neal v. Farmers Insurance Exchange, 21 Cal.3d 910, 920, 148 Cal.Rptr. 389, 394, 582 P.2d 980, 985 (1978), quoting Gruenberg v. Aetna Insurance Co., 9 Cal.3d 566, 574, 108 Cal.Rptr. 480, 485, 510 P.2d 1032, 1037 (1973). The question whether the insurer acted in good faith in rejecting a claim is one of fact for the jury whose finding must be affirmed if supported by substantial evidence. Neal, supra, 21 Cal.3d at 922, 148 Cal.Rptr. at 395, 582 P.2d at 987; Northwestern Mutual Insurance Co. v. Farmers Insurance Group, 76 Cal.App.3d 1031, 1053, 143 Cal.Rptr. 415, 428 (1978).
 
 
 21
 The jury found St. Paul breached its duty of good faith by declining the claim. St. Paul contends that its refusal was reasonable in light of its sincere belief that the repair exclusion applied to the loss. It is correct that an honest dispute over policy coverage is not actionable. The question is whether a reasonable insurer, faced with this claim, would have acted as St. Paul did.
 
 
 22
 Leslie points to evidence of bad faith: (1) the repair exclusion clearly does not apply so the refusal was patently unreasonable and (2) after its initial refusal St. Paul duplicitously agreed to reconsider the claim. Leslie points to documentary evidence which reveals that St. Paul's position was firmly fixed and reconsideration was a pretense to interview witnesses and collect evidence in preparation for litigation.[4]
 
 
 23
 While the evidence of bad faith may not be overwhelming, we cannot say it is wholly insubstantial. Under California law, "(w)here the evidence is conflicting or gives rise to conflicting inferences the findings of the trial court will not be disturbed on appeal." Northwestern Mutual, supra, 76 Cal.App.3d at 1053, 143 Cal.Rptr. at 428. We affirm the finding of bad faith.
 
 Inflation
 
 24
 St. Paul contends that the trial court erred in allowing the jury to inflate the damages to compensate Leslie for the change in value of dollars between 1973 and 1978. Here the district court took into consideration that: (1) there was a loss which could be compensated only by replacement cost; (2) there was bad faith on the part of the insurer; and (3) there was a steady rate of inflation during the compensable period. Given these unique circumstances, it was not error to allow the jury to use inflation as an element of damages. See also Tri-Delta Engineering, Inc. v. Insurance Co. of North America, 80 Cal.App.3d 752, 757, 146 Cal.Rptr. 14, 17 (1978).
 
 
 25
 The insurer's tort of bad faith renders it liable 'for all detriment proximately resulting therefrom, including economic loss . . ." Fletcher v. Western National Life Ins Co., 10 Cal.App.3d 376, 401-02, 89 Cal.Rptr. 78, 94 (1970). Accord, Mustachio v. Ohio Famers Ins. Co., 44 Cal.App.3d 358, 363, 118 Cal.Rptr. 581, 584 (1975).
 
 
 26
 Inflation loss is a proximate result of the insurer's bad faith. The prospect that the claim will decline in value as the value of money declines is foreseeable, if not indended. Damages must reflect this loss if the plaintiff is to be fully compensated.
 
 
 27
 St. Paul argues that California law does not permit adjustment of damages for past inflation. We disagree. 'California law has long approved consideration of the factor of inflation as a matter of economic reality.' Rodriguez v. McDonnell Douglas Corp., 87 Cal.App.3d 626, 662, 151 Cal.Rptr. 399, 419 (1979) (citations omitted). Past inflation is 'a matter of economic reality.' Indeed, the past rate is considerably less speculative.
 
 
 28
 When state law principles support recovery, federal courts are not required to deny relief to litigants in diversity cases merely because no one has presented an identical claim in a state court. See Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516, 523 (10th Cir.) ('for every injury wrongfully inflicted, some redress under state common law must be afforded since it is essential that citizens be able to look to their government for redress'), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979).[5]
 
 
 29
 Finally, we note that the California courts have allowed damages for past inflation in a slightly different setting. In Camrosa County Water District v. Southwest Welding & Manufacturing Co., 49 Cal.App.3d 951, 123 Cal.Rptr. 93 (1975), the plaintiff, asserting breach of warranty, recovered the cost of repair as of the trial date. 49 Cal.App.3d at 954, 123 Cal.Rptr. at 94. The court acknowledged that the damages reflected inflation between the date of breach and the date of trial, and upheld the award. 49 Cal.App.3d at 957-58, 123 Cal.Rptr. at 96. It would be anomalous to deny Leslie comparable damages simply because it replaced the stacker at its own expense prior trial.[6]Attorneys Fees
 
 
 30
 An insurer who wrongly refuses to pay a claim must compensate the insured for all damages caused by the refusal. When the insured must litigate its claim, counsel fees are part of its compensatory damages. Mustachio v. Ohio Farmers Insurance Co., 44 Cal.App.3d 358, 364, 118 Cal.Rptr. 581, 584 (1975). See generally McCarthy, Punitive Damages in Bad Faith Cases (2d ed. 1978) at 80. Because St. Paul wrongly denied coverage, Leslie was forced to employ counsel to recover its loss of the stacker, and it should recover attorneys fees.
 
 
 31
 But California cases after Mustachio foreclose an award of fees for 'legal services attributable to any portion of plaintiff's recovery which exceeds the amount due under the policy.' Dinkins v. American National Ins. Co., 92 Cal.App.3d 222, 234, 154 Cal.Rptr. 775, 782 (1979). Accord, Twentieth Century Fox Film Corp. v. Harbor Ins. Co., 85 Cal.App.3d 105, 112-15, 149 Cal.Rptr. 313, 318-19 (1978).[7]
 
 
 32
 We reverse and remand the award of attorneys' fees. Fees should be awarded only for services attributable to recovery of the amount due under the policy and not for bad faith or its consequences, including inflation loss.
 
 CONCLUSION
 
 33
 We determine that the repair exclusion does not apply to the instant loss, and we affirm the judgment that St. Paul must compensate Leslie for the loss of the stacker. Because substantial evidence supports the jury's finding that St. Paul unreasonably denied coverage for the loss, St. Paul is also liable for any damages Leslie suffered by not receiving prompt payment for its loss in 1973, including attorneys fees and the decreased value of money and attorneys' fees insurred in recovering the amount due on the policy. Attorneys' fees for the bad faith claim are not recoverable. The judgment is AFFIRMED in part REVERSED and REMANDED in part.[8] In view of our disposition of this action, Leslie's conditional appeal against FM Insurance Company, No. 78-2649, is dismissed.
 
 
 34
 POOLE, Circuit Judge, concurring in part and dissenting in part:
 
 
 35
 I agree with the majority's conclusion that Leslie's loss was covered by its policy with St. Paul; that the jury could reasonably have found bad faith in St. Paul's delay while pretending to reconsider its original denial; and that under California law, by which we are bound in this diversity action, it was error to award attorney's fees for any portion of plaintiff's recovery in excess of that due under the policy.
 
 
 36
 But for reasons which I shall attempt to explain, I believe that the finding of bad faith by St. Paul in its initial denial of coverage simply is without support in this record and that consequently the majority has erred in affirming an award which gave Leslie an unearned windfall of damages and attorney fees. Furthermore, I must disagree with the allowance in this case of calculations of inflation as an element of damages. I therefore respectfully dissent from these holdings.
 
 Breach of Duty of Good Faith
 
 37
 St. Paul's all-risk had some exceptions one of which precluded liability for:
 
 
 38
 "I) Loss or damage sustained while the property is actually being worked upon and directly resulting therefrom or caused by any repairing, adjusting or servicing."
 
 
 39
 At trial the parties vigorously contested whether the test run of the stacker was properly to be considered part of the repairing of the track and thus whether the event which culminated in its damage fell within the exception. This was not a simple and easy issue at trial, and it has not been an easy decision for us on this appeal. Some fairly reflective analysis was required before the majority was able to reach the conclusion that testing the repaired track by running the stacker over it was not so closely a part of the process of repairing as to be deemed within the exception. Therefore, I simply cannot accept the majority's flat assertion that "the repair exclusion clearly does not apply so the refusal was patently unreasonable * * *." (p. 660) Whether it does or does not apply remains a close, not a self-evident supposition, and I see no warrant for the jury's finding that St. Paul's initial refusal was actionable bad faith.
 
 
 40
 St. Paul's conduct and its abuse of the "reconsideration" period is different. The trier of fact could find that the promise to reconsider denial was only a pretense to allow the insurer to prepare for trial. Even so, the most the majority opinion states is that "while the evidence of bad faith may not be overwhelming, we cannot say it is totally insubstantial." (Id.)
 
 
 41
 But if I am correct in insisting that the single breach of St. Paul's duty of good faith and fair dealing reasonably supported by evidence was its uncandid use of the reconsideration period, then no allowance of the amount due for the years 1973 to 1978 was proper. Leslie was not by reason of that specific breach deprived of the use of the policy proceeds during that period of time. St. Paul had a plausible argument that the exclusion did apply and the right to litigate the issue. If there was a breach in pretending to reconsider, that merely delayed Leslie's getting to the courthouse to challenge the initial denial which, I maintain, was neither unreasonable nor indicative of bad faith. This delay took approximately four months from the initial denial on September 4, 1973, until St. Paul finally reaffirmed that denial on January 8, 1974. The very most in damages which Leslie could show would have been that small amount, if any, attributable to the four-month delay, including any increase in attorney fees and litigation expenses due specifically to such delay. It was entirely improper to employ a measure of recovery premised on the unfounded assumption that this entire law suit was permeated by that single discrete lag in time.
 
 Inflation
 
 42
 Because this improper use of the reconsideration period constitutes the only breach of St. Paul's duty of good faith and fair dealing, allowing inflation of the amount due between 1973 and 1978 was improper. This particular breach did not proximately cause Leslie to be deprived of the use of the policy proceeds due for that period of time. Rather, it merely caused a delay in Leslie's opportunity to sue. The delay was only about four months: from St. Paul's initial denial of the claim on September 4, 1973, to its reaffirmation of the denial on January 8, 1974.
 
 
 43
 Moreover, I am reluctant on so insubstantial a premise to set a major and troublesome precedent for allowing inflation of past damages in this type of action (or indeed in tort actions generally) under California law. There is not presently any clear California precedent for such an open sesame to damages. Tri-Delta Engineering, Inc. v. Insurance Company of North America, et al., 80 Cal.App.3d 752, 146 Cal.Rptr. 14 (1978), cited in the opinion at page 661, is not authority for an award for inflation; it does not so hold and, indeed that was not an issue on appeal. Indeed, that unique charting of trial confusion supplies doubtful help to any of our issues. The California courts have made some general statements in wrongful death and personal injury cases to the effect that the trier of fact may take into consideration the declining purchasing power of the dollar in determining compensation for loss. E. g., Rodriguez v. McDonnell Douglas Corp., 87 Cal.App.3d 626, 662, 151 Cal.Rptr. 399, 419 (1979); Kircher v. Atchison, etc., Ry. Co., 32 Cal.2d 176, 187, 195 P.2d 427, 434-435 (1948); Chadek v. Spira, 146 Cal.App.2d 360, 368, 303 P.2d 879 (1956); Gist v. French, 136 Cal.App.2d 247, 274, 288 P.2d 1003 (1955); Risley v. Lenwell, 129 Cal.App.2d 608, 650, 277 P.2d 897 (1954); Guerra v. Balestrieri, 127 Cal.App.2d 511, 520, 274 P.2d 443 (1954); Burke v. City and County of San Francisco, 111 Cal.App.2d 314, 320-22, 244 P.2d 708 (1952). Our circuit has acknowledged these references in the context of recognizing "two uses for which the courts have taken cognizance of changes in the purchasing power of money:" (1) comparing a damage award with previous awards in similar cases; and (2) estimating future income and expenses in arriving at a damage award. United States v. English, 521 F.2d 63, 72-73 (9th Cir. 1975).
 
 
 44
 Leslie cites Camrosa County Water District v. Southwest Welding & Manufacturing Co., 49 Cal.App.3d 951, 123 Cal.Rptr. 93 (1975) as precedent for inflating an award of past damages. But that case relied heavily on the fact that the plaintiff had not made its repairs prior to trial and allowed it to recover the cost of repair as of the trial date rather than as of the time the damage occurred. This simply allowed plaintiff to recover its actual out-of-pocket loss.
 
 
 45
 Here, Leslie replaced the stacker long before trial and, in effect, seeks compensation now for the lost use of the money it would have had if St. Paul had paid the claim then. Providing that form of compensation is the purpose of prejudgment interest, which is authorized by California statute, Civil Code §§ 3287 and 3288. See Lineman v. Schmid, 32 Cal.2d 204, 195 P.2d 408 (1948). Allowing an augmentation of the award for inflation here circumvents the 7% legal rate of interest set by the California legislature. Leslie wrongly argues that California's prejudgment interest statute applies only to contract cases. While Civil Code § 3287(b) expressly applies only to contract actions, § 3287(a) applies to "every person who is entitled to recover damages certain, or capable of being made certain by calculation ... upon a particular day." And § 3288 expressly allows for interest to be given in the discretion of the jury in an action for the breach of an obligation not arising from contract.
 
 
 46
 There is, of course, an argument that allowing inflation of past damage awards may more fully compensate in certain cases, and that it may be more consistent with economic reality than the prejudgment interest rate, and less speculative than awards for future inflation. That argument is properly addressed to the California courts and legislature. We, in this diversity case are not commissioned to create the law for the state.
 
 
 47
 In English, supra, we recognized that the "issue of when, and to what extent, a court may take cognizance of inflation in making damage awards ..." is troublesome. 521 F.2d at 72. It is an important issue warranting careful and thorough consideration. Even if we deliberately intend to create a new precedent, this case is an inappropriate vehicle for doing so.
 
 
 48
 Since the district court failed to make the requisite distinctions between allowable and nonallowable attorney fees and damages, in addition to its erroneous awarding of damages on the issues of bad faith and inflation, I would reverse the judgment and grant a new trial.
 
 
 
 *
 Of the District of Arizona
 
 
 [1]
 St. Paul's denial was based exclusively on the repair exclusion, reproduced at footnote 2, infra. Only during litigation did St. Paul urge that the vehicle exclusion applied
 
 
 [2]
 The relevant exclusions read:
 "This policy does not insure ... Loss Arising From:
 "A) Loss or damage covered by the insured's Fire and Earthquake policy(s) nor in any event loss or damage caused by ... Vehicles, ...
 "I) Loss or damage sustained while the property is actually being worked upon and directly resulting therefrom or caused by any repairing, adjusting or servicing."
 
 
 [3]
 We need not decide whether the general rule that ambiguities are construed in favor of the insured applies to this policy, see, e. g., Harris v. Glens Falls Ins. Co., 6 Cal.3d 699, 701, 100 Cal.Rptr. 133, 134, 493 P.2d 133, 134 (1972) or whether the rule is inapplicable because this policy was not drafted by the insurer, see, e. g., Travelers Indemnity Co. v. United States, 543 F.2d 71, 74 (9th Cir. 1976)
 
 
 [4]
 St. Paul's agent, Mr. de Jonge, testified during his deposition that "the whole purpose (of the investigation) was to strengthen our denial position." The jury might well have believed that the purported investigation for purposes of reconsidering the claim was disguised trial preparation
 
 
 [5]
 In any event, "we are limited in our review of the district court's interpretation of the law of the state in which it sits. We do not overrule a district judge on the question of state law unless the judge's findings are 'clearly wrong.' " Gee v. Tenneco, Inc, 615 F.2d 857, 861 (9th Cir. 1980) (citation omitted). We cannot say that the district court's interpretation of California law was "clearly wrong."
 
 
 [6]
 See also Tri-Delta Engineering, Inc. v. Insurance Co. of North America, 80 Cal.App.3d 752, 757, 146 Cal.Rptr. 14, 17 (1978) (jury considered past inflation; not an issue on appeal)
 
 
 [7]
 Leslie contends that St. Paul waived the right to appealthe award of attorneys' fees by failing to object to the award in thecourt below. Leslie also asserts that St. Paul failed to meet itsburden of apportionment
 Prior to a hearing on the matter, St. Paul opposed Leslie's motion for attorneys' fees. At the hearing, St. Paul asked to cross-examine Leslie's counsel, apparently for purposes of apportionment, but suggested that the court first specify the services for which fees could be awarded.
 The court determined that fees could not be awarded for services related to the punitive damages claim and the claim against FM, and it then awarded the other fees sought. St. Paul did not pursue the matter further until this appeal.
 Although St. Paul did not raise the issue as sharply as it might have, we believe that, under the circumstances, it preserved the right to appeal the fee award. Cf. Sheehy v. Southern Pacific Transportation Co., 631 F.2d 649, 652 53 (9th Cir. 1980) (objection during pretrial argument preserved appeal right even though evidence not challenged when admitted).
 In any event, we have discretion to consider an issue not raised below when it comes to light during the pendency of an appeal through developments in the law. See Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); United States v. Patrin, 575 F.2d 708, 712 (9th Cir. 1978). Two California cases that clarified the applicable law, Dinkins and Fox Film, were decided after the proceeding below. Even if St. Paul had not adequately raised the issue in district court, we could appropriately consider it.
 We also reject Leslie's assertion that St. Paul failed to meet its burden of apportionment. St. Paul was not given an adequate opportunity to meet any such burden. In the absence of a clear ruling by the court excluding fees incurred in pursuing the bad faith claim, it would have been futile for St. Paul to attempt to apportion fees. On remand, however, St. Paul may face this burden. See Mustachio v. Ohio Farmer Ins. Co, 44 Cal.App.3d 358, 364 n. 7, 118 Cal.Rptr. 581, 585 n. 7 (1975).
 
 
 [8]
 In view of our disposition of this action, Leslie's conditional appeal against FM Insurance Company, No. 78-2649, is dismissed