Lorenzo BIUNDO, Plaintiff-Appellee,

v.

OLD EQUITY LIFE INSURANCE CO.,
et al., Defendant-Appellant.

No. 79-3294.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1981.

Decided Dec. 4, 1981.

Edward L. Lascher, Lascher & Lascher, P. C., Ventura, Cal., for defendant-appellant.

Douglas R. McCorquodale, Escondido, Cal., argued, for plaintiff-appellee; McCormick & Royce, San Diego, Cal., on brief.

Before POOLE and FERGUSON, Circuit Judges, and CROCKER,* District Judge.

POOLE, Circuit Judge.

Old Equity Life Insurance Company (Equity) appeals a jury verdict rendered in this diversity action, holding it liable on a disability insurance contract and for damages in tort for breach of the insurer's duty to deal in good faith with its insured. The jury awarded Lorenzo Biundo compensatory damages of $26,500 on his contract claim, $6,622.50 on his tort claim (the amount of attorney's fees incurred by Biundo in the prosecution of this suit), and in addition awarded $70,000 in punitive damages. For reasons stated below, we affirm the findings of liability on both the tort and contract claims, and affirm the compensatory damage award on the contract claim. However, we reverse and remand for new trial as to damages on the tort claim, and as to Equity's liability for punitive damages.

FACTS

Appellee Biundo was owner of an incorporated masonry business of which he was president and in which he worked as a mason. He collected hourly, union-scale wages from the corporation for his mason work, but received no salary or other remuneration for his services as president. In 1973 he purchased a disability insurance policy from Equity, the appellant. The policy listed Biundo's primary occupation as bricklaying, and the amount of premiums was calculated on the basis of the risk involved in that occupation. He subsequently suffered an accident leaving him completely disabled as a mason. After collecting benefits from appellant for several months, he received a notice that his annual premium was due. He contacted Nance, the agent who had sold him the policy. Nance in turn spoke with David Lindgren, Equity's employee and adjuster. Lindgren told Nance that so long as full disability existed, there was a waiver of premium. Nance then informed appellee that he did not have to pay the premium. Shortly afterwards, ap-

* Hon. M. D. Crocker, United States District Judge, for the Eastern District of California, sitting by designation.

pellee received a second ("late") notice of nonpayment, and again contacted Nance. After a second discussion with Lindgren, Nance repeated his advice. When a third notice arrived and a third contact made by Nance to Lindgren, the latter responded that Nance should keep out of the matter because there were problems developing. The "problems" apparently centered about Biundo's "regular" occupation (brick mason) —from which he was medically disabled— and his position as president of the company.

On April 15, 1975 (42 days after the premium due date), despite his repeated advice to Nance that the waiver of premium provision applied, and contrary to medical information that appellee was totally disabled, Lindgren wrote a letter to appellee, the effect of which, in vague language, was to change his status from total to partial disability. Lindgren apparently fixed the date of the change as of February 4, 1974. He did not ever explicitly apprise appellee that he was deemed no longer fully disabled. But because the change was held to have occurred prior to the due date of the annual premium, its further effect was not only to cancel the waiver of premium provision but also to cause the policy to lapse for failure to pay that premium. Consequently, when appellee underwent further surgery for his condition and filed a new claim, it was denied.

## I. COMPENSATORY DAMAGES FOR UNPAID DISABILITY BENEFIT.

The amount of unpaid disability benefits due to appellee ($26,500) is without substantial dispute. On this record Equity's breach of the insurance contract and its consequent liability for the full amount of unpaid premiums is likewise clearly established. We affirm the jury's award in that amount.

## II. COMPENSATORY DAMAGES FOR BAD FAITH DEALING.

The district court instructed the jury that it could award Biundo the full amount of the attorney's fees incurred in the prosecution of this action as compensatory damages for Equity's breach of the insurer's duty to deal in good faith with its insured. The jury made such award. However, California cases, by which we are bound in this diversity action, reveal that this instruction was erroneous.

Under California law, an insurer who wrongly refuses to pay a claim must compensate the insured for all damages caused by the refusal. When that refusal forces the insured to litigate when he ought not to have been required to go to court, necessary and reasonable counsel fees are part of his compensatory damages. *Mustachio v. Ohio Farmers Insurance Co., supra*, 44 Cal.App.3d 358, 364, 118 Cal.Rptr. 581, 584 (1975); *Dinkins v. American National Insurance Co.*, 92 Cal.App.3d 222, 234–35, 154 Cal.Rptr. 775, 782–83 (1979); *Leslie Salt Co. v. St. Paul Mercury Insurance Co.*, 637 F.2d 657, 662 (9th Cir. 1981). However, recovery of counsel fees may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract. The insured may not collect attorney's fees incurred in pursuit of a bad faith claim or a claim for other damages. "California Cases * * * foreclose an award of [attorney's fees] for legal services attributable to any portion of plaintiff's recovery which exceeds the amount due under the policy." *Leslie Salt, supra*, 637 F.2d at 662, *quoting Dinkins, supra*.

Thus, it was improper to award the full amount of Biundo's attorney's fees. The jury should have been instructed to apportion the fees and to award only the amount attributable to the contractual claim. *Id*. Because the record at this stage of the proceedings offers no basis for such an apportionment, the award must be reversed and remanded for a new allocation.

## III. PUNITIVE DAMAGES.

The district court instructed the jury that it could include a punitive element in the damage award in Biundo's bad faith claim if it found that Equity acted with malice. It defined malice as "a motive and

willingness to vex, harass, annoy, or injure another person." This was correct. Cal. Civ.Code § 3294; *Johns-Manville Sales Corp. v. Workers' Compensation Appeals Board*, 96 Cal.App.3d 923, 158 Cal.Rptr. 463 (1979). However, the court further instructed the jury that it could infer malice upon a showing that "the defendant's conduct was willful, intentional, *or* done in conscious disregard of another's rights." (Emphasis supplied.) California courts have held that disjunctive phrasings almost identical to this one are prejudicially erroneous because they permit a finding of malice "in any case of a wilful or reckless act or conduct without the required aggravating circumstances amounting to malice." *Ebaugh v. Rabkin*, 22 Cal.App.3d 891, 896, 99 Cal.Rptr. 706, 709 (1972); *Liodas v. Sahadi*, 19 Cal.3d 278, 284, 137 Cal.Rptr. 635, 638, 561 P.2d 316, 319 (1977). For the above error the punitive damage award must be reversed. It would have to be reversed in any event for new trial because the damage award (of attorney's fees) upon which the punitive damage award depended has been reversed. California law requires that a punitive damage award bear relationship to compensatory damages and so must also be redetermined in such circumstances. *Liodas, supra.* Upon failure of the attorney's fee award in this case, the award for punitive damages also fails.

### IV. COMMENTS ON THE EVIDENCE.

Equity asserts that it was denied a fair trial by the trial judge's comments on the evidence during his instruction of the jury. These included lengthy restatements of each of Biundo's legal theories, coupled with recitations of the evidence supporting those theories and generally followed by the mild disclaimer, "Well, these are factors for you to take into account." Equity's case did not enjoy similar treatment. In fact, several statements by the trial court could fairly be read as impugning the credibility of Equity witnesses.

██ Biundo argues that Equity may not now raise objections to the content or manner of the court's instructions because it did not comply with Fed.R.Civ.P. 51, which states:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Equity referred to the trial court's comments on the evidence only once in its objections.

I don't really know what in the charge constituted an instruction and what in the charge constituted the Court's comments on the evidence. And in that sense it becomes very difficult for me to separate and pinpoint what error I felt there was in the charge.

The objection was not a model of clarity. However, rote compliance with Rule 51 is not required; rather, we take a functional approach to the determination whether its requirements have been satisfied. *See, e. g., Mayheu v. Hughes Tool Co.*, 569 F.2d 459, 470 (9th Cir. 1977). Rule 51's purpose is:

to enable the trial judge to avoid error by affording him an opportunity to correct statements and avoid omissions in his charge before the cause has been decided by the jury.

*Investment Services Co. v. Allied Services Corp.*, 519 F.2d 508, 510 (9th Cir. 1975). We believe that taken in its context the objection here fulfills the purpose of the rule. Counsel's statement was enough to have alerted the trial court that its comments had been so numerous as to create difficulty in separation and specificity. The record lends support to this position. Furthermore, the trial court manifested some lack of receptivity to objections and some impatience with counsel which reasonably might have been a barrier to free expression even to a more adventuresome advocate. Under these circumstances we are not inclined to appraise the situation in a strictly technical light by requiring that counsel have suggested more pointedly his complaint that

the trial court's comments were less than evenhanded. We therefore have reviewed the evidence and the trial judge's comments to determine whether abuse of discretion sufficient to require appellate intervention has occurred.

Of course it is axiomatic that, in commenting on the evidence and in his instructions, a trial judge will always wish to guard against unfairly tipping the scales in favor of or against a contested issue or a party. As to the jury findings of liability on the contract and tort claims, and as to the amount of unpaid disability, we believe the evidence to have been so strong that it is most unlikely that any remarks in this record would have constituted an inducing factor in the verdicts for plaintiff. Moreover, neither at argument nor in briefs has appellant mounted a truly serious challenge to the issues of liability. And since we have already held that error in the rulings on the issues of contract compensatory damages and of punitive damages require retrial, we conclude that the ends of justice do not call for more than has been already said.

For the reasons hereinabove set forth, the judgment of the district court is AFFIRMED IN PART; REVERSED AND REMANDED IN PART.